Rodney TAYLOR, Plaintiff,

v.

Michael KAVANAGH, Defendant.

No. 78 Civ. 4770.

United States District Court,
S. D. New York.

June 26, 1980.

Rodney Taylor, pro se.

Greenhill, Speyer & Thurm, New York City, for defendant.

GRIESA, District Judge.

This is a pro se action under 42 U.S.C. § 1983 for alleged violation of plaintiff's civil rights. Plaintiff is a paroled state prisoner. He seeks to set aside a criminal conviction which followed his guilty plea in a state court. He also seeks compensatory and punitive damages. Defendant is the Assistant District Attorney who prosecuted plaintiff's state court criminal case.

Defendant moves for judgment on the pleadings. Plaintiff moves for summary judgment. Defendant's motion is granted. Plaintiff's motion is denied. The action is dismissed.

### I.

Plaintiff was arrested on October 9, 1974 and indicted on December 20, 1974 on charges of third degree burglary and attempted third degree grand larceny. He was again arrested on August 14, 1975 for third degree burglary and criminal possession of a controlled substance.

On June 9, 1976 plaintiff entered a plea of guilty in the City Court of Kingston to the third degree burglary charge in the indictment of December 20, 1974. It was agreed that this plea would be in satisfaction of all charges in that indictment, and also in satisfaction of the charges involved in the August 14, 1975 arrest.

By the time of the guilty plea the charges relating to the August 14, 1975 arrest were being considered by a grand jury, but an indictment had not yet been returned.

On June 7, 1977 plaintiff moved to vacate his guilty plea on the grounds:

(1) That, during the plea bargaining and in court at the time of the guilty plea, Kavanagh had represented to him and to the court that the second grand jury had actually returned an indictment, whereas no such indictment had yet been issued;

(2) That Kavanagh had indicated he would not abide by an alleged promise not to make a sentence recommendation.

The motion to vacate the guilty plea was denied.

Plaintiff was sentenced on February 9, 1978 to an indeterminate term of six years imprisonment with a minimum term of five years. At the time of the sentencing Kavanagh made a sentence recommendation.

Plaintiff appealed his conviction to the Appellate Division, Third Department. On September 28, 1978 the Appellate Division issued an opinion, holding that any incorrect representation about the status of the second grand jury proceeding was harmless error, but that the failure of the prosecutor to honor the promise about sentence recommendation required that plaintiff be resentenced. *People v. Taylor*, 64 A.D.2d 998, 408 N.Y.S.2d 835.

For some reason, the record is not clear as to what occurred on the resentencing. However, presumably the resentencing took place.

### II.

The present action is based upon the alleged misrepresentations by defendant Kavanagh regarding the status of the second grand jury proceeding. Plaintiff claims that he was improperly induced to plead guilty by the alleged misrepresentations. As already indicated, he claims that misrepresentations were made to him during the plea negotiations, and that the misrepresentations were repeated in court at the time of the guilty plea. Plaintiff seeks to have the conviction set aside, and also seeks a judgment for damages against Kavanagh.

The claim to have the conviction set aside can be dealt with briefly. Kavanagh, as an Assistant District Attorney, is not a defendant from whom such relief can be obtained. No other defendant has been sued.

With regard to the damage claim, the defense asserted on the present motion is that the alleged misrepresentations occurred in the course of Kavanagh's performance of his prosecutorial function, and that therefore Kavanagh is immune from suit. The prosecutorial immunity doctrine was discussed by the Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct.

984, 47 L.Ed.2d 128 (1976). In that case the claim was made that a state prosecutor had knowingly used false testimony at a criminal trial and had suppressed certain exculpatory materials. In an earlier federal court action, these allegations had resulted in the granting of a habeas corpus petition. However, the Supreme Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damage under § 1983." 424 U.S. at 431, 96 S.Ct. at 995. In describing the basis for the immunity, the Court characterized the activities of the defendant as "intimately associated with the judicial phase of the criminal process." *Id.* at 430, 96 S.Ct. at 995. The Court stated that it had no reason to consider whether a prosecutor would be immune for activities "that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.* at 430–31, 96 S.Ct. at 995. In connection with the latter statement, there was the following footnote:

"We recognize that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. A prosecuting attorney is required constantly, in the course of his duty as such, to make decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present. Preparation both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence. At some point and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court. Drawing a proper line between these functions may present difficult questions, but this case does not require us to anticipate them."

The *Imbler* doctrine was reaffirmed in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The latter action grew out of proceedings in the Department of Agriculture resulting in the revocation of plaintiff's registration as a commodity futures commission merchant. A damage action was brought against various federal defendants, including the agency officials who initiated the proceeding and the agency attorney who had presented the evidence. The Court held that these two categories of defendants were absolutely immune from such a suit for damages, because they performed functions analogous to those of a prosecutor. In describing the holding in the *Imbler* case, the Court stated:

"In light of these and other practical considerations, the Court held that the defendant in that case was entitled to absolute immunity with respect to his activities as an advocate, 'activities [which] were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force.'"

This statement was accompanied by the following footnote:

"The *Imbler* Court specifically reserved the question 'whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate.'"

Shortly before the *Imbler* decision, the Second Circuit had decided *Martin v. Merola,* 532 F.2d 191 (2d Cir. 1976). This was a § 1983 damage action, charging that state prosecutors had made inflammatory statements to the press, which had infringed plaintiff's right to a fair trial. The District Court dismissed the case as premature. The Court of Appeals affirmed *per curiam* on the rationale used by the District Court. However, Judges Lumbard and Gibbons (the latter sitting by designation from the Third Circuit) filed a separate opinion discussing the question of prosecutorial immunity. This opinion took the view that there is no prosecutorial immunity with regard to statements by prosecutors to the press,

which go beyond necessary descriptions of the nature of the prosecution and violate constitutional rights to a fair trial.

A case in this district dealing with prosecutorial immunity is *Lofland v. Meyers*, 442 F.Supp. 955 (S.D.N.Y.1977). The action was against various federal officers, including a prosecutor. The court construed the complaint to present damage claims under the federal constitution, within the doctrine of *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The action charged the prosecutor with (1) suborning perjury, (2) withholding evidence, (3) introducing illegally obtained evidence, and (4) participating in an illegal search and seizure of plaintiff's property. The court held that there was immunity with respect to Items (1), (2) and (3) since these were "intimately associated with the judicial phase" of the prosecution, within the meaning of the *Imbler* decision. The court held, however, that there was no immunity for Item (4) since it was "an activity investigative rather than judicial in nature" 442 F.Supp. 958. *See also Daniels v. Kieser*, 586 F.2d 64 (7th Cir. 1978); *Front Runner Messenger Service, Inc. v. Ghini*, 468 F.Supp. 305 (N.D.Ill.1979).

There appears to be no judicial holding directly in point—*i. e.*, dealing with a situation where a damage action against a prosecutor is based on misrepresentations made in connection with plea bargaining. There is a dictum by then District Judge Mansfield in *Palermo v. Rockefeller*, 323 F.Supp. 478, 485 (S.D.N.Y.1971), to the effect that prosecutorial immunity should not apply to fraud committed in the plea bargaining process—*i. e.*, to fraud consisting of a prosecutor entering into a plea bargaining agreement with knowledge that the agreement would probably not be performed. However, Judge Mansfield made this statement with regard to a possible amended complaint that might be filed in the case before him. No amended complaint making such allegations was filed, so that Judge Mansfield did not have occasion to make a holding regarding an actual case. *See Palermo v. Rockefeller*, 70 Civ. 3705, n. o. r., (S.D.

N.Y. July 26, 1971). Also, it should be noted that the dictum in *Palermo* antedated the *Imbler* decision of the Supreme Court.

### III.

The question is squarely presented in the present case as to whether there is to be immunity from a Section 1983 damage suit where a prosecutor is alleged to have procured a guilty plea by means of misrepresentations made to the accused in the plea negotiations and repeated in court at the time of the plea. The *Imbler* and *Butz* decisions specifically held that prosecutorial immunity applies to a prosecutor's activities in initiating a criminal case and presenting evidence in court. From a factual standpoint, these activities are, of course, different from the plea bargaining phase of a prosecutor's work. Indeed, plea negotiations would seem to fall outside of the "advocacy" category referred to in *Imbler* and subsequent decisions.

As already noted, the Supreme Court in *Imbler* and *Butz* left open the question of whether absolute prosecutorial immunity applies to a prosecutor's activities other than as an advocate. The Supreme Court specifically referred to two other categories of activities, which the Court declined to decide on—investigative and administrative activities.

As is often the case, the scope of a particular legal doctrine is only imperfectly indicated by labels. The underlying purpose must be examined.

The purpose of the doctrine of prosecutorial immunity is to ensure that a prosecutor will perform his difficult function with complete vigor and independence, undeterred by the spector of liability for damages with respect to his activities. Basic to the considerations underlying this immunity is the fact that, at the end of the line in any successful criminal prosecution, there is usually a stern penalty likely to provoke the desire for retaliation. The detriment of unfounded damage suits by vindictive criminal defendants outweighs the benefit of meritorious suits against prosecutors who

have committed wrongs in the course of the performance of their functions. *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

Prosecutorial immunity for activities in the plea bargaining process is needed to fully carry out this purpose. Experience has demonstrated that plea bargaining serves the public interest. The great majority of criminal cases are disposed of by pleas. Consequently the plea bargaining process is a major part of the criminal justice system. Discussions, representations and promises are all a necessary part of this process.

Plea bargaining, if it is fruitful, results in a defendant's conviction, which in turn may result in the severe penalty of imprisonment or fine. If damage actions are allowed against prosecutors for activities in the plea bargaining process, this would present a substantial threat of unfounded, malicious suits. Just as with other phases of a prosecutor's activities, the detrimental effect of unfounded damage suits would outweigh any salutary effect of those with merit.

It is important to note that a criminal defendant, who can show that his guilty plea was induced by misrepresentations, is not without remedy. In an appropriate case he will be permitted to have his plea set aside or he may obtain the abrogation of the entire prosecution. *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Palermo v. Oswald*, 412 F.Supp. 935 (S.D.N.Y.1976), *aff'd*, 545 F.2d 286 (2d Cir. 1976), *cert. dismissed*, 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977). I therefore hold that a prosecutor is entitled to immunity from suits for damages under 42 U.S.C. § 1983 based on alleged misrepresentations to a criminal defendant during the plea bargaining process.

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment dismissing the case is granted.

So ordered.