Rodney TAYLOR, Plaintiff-Appellant,

v.

Michael KAVANAGH,
Defendant-Appellee.

No. 508, Docket 80-2205.

United States Court of Appeals,
Second Circuit.

Submitted Jan. 9, 1981.

Decided Jan. 26, 1981.

Rodney Taylor, pro se.

Charmaine Marlowe, New York City (Greenhill, Speyer & Thurm, New York City, of counsel), for defendant-appellee.

Before KAUFMAN, OAKES and MESKILL, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Plaintiff Rodney Taylor, *pro se*, instituted this action under 42 U.S.C. § 1983 in 1978 against Michael Kavanagh, an Assistant District Attorney for Ulster County, New York. Claiming that Kavanagh lied to him during plea negotiations and violated the terms of the negotiated plea agreement, Taylor seeks to set aside a criminal convic-

tion resulting from his guilty plea. He also requests compensatory and punitive damages amounting to $5.5 million.

## I.

Taylor was arrested in Kingston, New York, in October 1974, and on December 20, 1974, he was indicted and charged with third degree burglary and attempted grand larceny. He was taken into custody again on August 14, 1975, and charged with third degree burglary and criminal possession of a controlled substance in the seventh degree.

On June 9, 1976, Taylor, represented by counsel, pleaded guilty in the Ulster County Court to the third degree burglary charge contained in the December 1974 indictment. This plea was in full satisfaction of the charges resulting from both the October 1974 and the August 1975 arrests, although no indictment concerning the events of August 1975 had ever been returned. The court was advised that Taylor and Assistant District Attorney Kavanagh had agreed that no recommendation or statement would be made relating to the sentence to be imposed.

On June 7, 1977, Taylor moved in the state court to vacate his guilty plea, claiming that 1) during plea negotiations and at the time he entered his plea, the Assistant District Attorney had misrepresented to him and the court that a grand jury had returned an indictment on the charges relating to the August 1975 arrest; and 2) Kavanagh had indicated he would not abide by his promise not to recommend any sentence. This motion was denied.

At the sentencing proceeding in February 1978, Kavanagh made a lengthy and detailed statement concerning Taylor's prior criminal record and recommended that he receive the maximum punishment. The court then sentenced Taylor to an indeterminate term of six years, with a minimum term of two years. Taylor appealed the judgment of conviction, but the Appellate Division affirmed, ordering, however, that Taylor be resentenced. The court stated that although the misrepresentation by the

prosecutor concerning the existence of the second indictment was harmless error, resentencing was necessary because the prosecutor failed to honor his promise. *People v. Taylor*, 64 A.D.2d 998, 408 N.Y.S.2d 835 (3d Dep't 1978). Taylor eventually was resentenced to the same term he had previously received.

Taylor filed the instant action in October 1978, claiming he was induced to plead guilty by the Assistant District Attorney's misrepresentations concerning the alleged second indictment. He also asserted that he should be awarded damages for Kavanagh's breach of the plea bargain.

The defendant moved for judgment on the pleadings, which Judge Griesa granted in July 1980. *Taylor v. Kavanagh*, 492 F.Supp. 386 (S.D.N.Y.1980). He reasoned that because a prosecutor does not have custody over a convicted prisoner, Kavanagh was not a proper defendant in the suit to set aside Taylor's conviction. Extending the doctrine of absolute immunity to a prosecutor's plea bargaining activities. Judge Griesa also held that Kavanagh was immune from liability under 42 U.S.C. § 1983, and dismissed the action. We affirm.

## II.

■ We note at the outset that when a prisoner is challenging his imprisonment in state facilities, his sole federal remedy is a writ of habeas corpus pursuant to 28 U.S.C. § 2254, *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973). Taylor followed this approach in September 1979, seeking a writ in the United States District Court for the Northern District of New York. Judge Port dismissed the petition and denied a certificate of probable cause. *Taylor v. Fogg*, No. 79–CV–595 (N.D.N.Y. Mar. 21, 1980). Taylor did not appeal this order. Accordingly, we hold that he cannot raise this request to be set free in the instant civil rights action.

■ Taylor's damages claim also fails because the Assistant District Attorney's conduct in the plea bargaining negotiations

and the sentencing proceeding in state court is protected by the doctrine of absolute prosecutorial immunity. *See Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). *Imbler* provided the basis for the development of a functional approach to the immunity question. The Court held that absolute immunity from § 1983 liability exists for those prosecutorial activities "intimately associated with the judicial phase of the criminal process . . . ." *Id.* at 430, 96 S.Ct. at 994; *Butz v. Economou,* 438 U.S. 478, 510–11, 98 S.Ct. 2894, 2912–13, 57 L.Ed.2d 895 (1978). These protected "quasi-judicial" activities, *Forsyth v. Kleindienst,* 599 F.2d 1203, 1214–15 (3d Cir. 1979), include the initiation of a prosecution and the presentation of the Government's case. *Imbler, supra,* 424 U.S. at 431, 96 S.Ct. at 995.

■ Absolute protection does not extend, however, to a prosecutor's investigative or administrative acts, *id.* at 431 n.33, 96 S.Ct. at 995 n.33. Accordingly, we have recognized that where prosecutors act in this capacity, only the qualified "good faith" immunity that protects, for example, police officers, is available. *Lee v. Willins,* 617 F.2d 320, 321–22 (2d Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); *see also Hampton v. Hanrahan,* 600 F.2d 600, 631–32 (7th Cir. 1979), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (*per curiam*).

■ The task of determining whether a particular activity is better characterized as "quasi-judicial" and subject to absolute immunity, or "investigative" and subject to only qualified "good faith" immunity requires more than the mechanical application of labels. An examination of the functional nature of prosecutorial behavior, rather than the status of the person performing the act, is determinative. *Imbler, supra,* 424 U.S. at 430, 96 S.Ct. at 994; *Briggs v. Goodwin,* 569 F.2d 10, 21 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978). Thus, a prosecutor is insulated from liability where his actions directly concern the pre-trial or trial phases

of a case. For example, the swearing of warrants to insure a witness's attendance at trial, *Daniels v. Kieser,* 586 F.2d 64 (7th Cir. 1978), *cert. denied,* 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979), the falsification of evidence and the coercion of witnesses, *Lee v. Willins, supra,* or the failure to drop charges until immediately before trial, *Halpern v. City of New Haven,* 489 F.Supp. 841, 843 (D.Conn.1980) have been held to be prosecutorial activities for which absolute immunity applies. Similarly, because a prosecutor is acting as an advocate in a judicial proceeding, the solicitation and subornation of perjured testimony, the withholding of evidence, or the introduction of illegally-seized evidence at trial does not create liability in damages. *Lofland v. Meyers,* 442 F.Supp. 955, 958 (S.D.N.Y. 1977). The rationale for this approach is sound, for these protected activities, while deplorable, involve decisions of judgment affecting the course of a prosecution. The efficient, and just, performance of the prosecutorial function would be chilled if Government attorneys were forced to worry that their choice of trial strategy and tactics could subject them to monetary liability, or at best, the inconvenience of proving a "good faith" defense to a § 1983 action.

■ In contrast, activities in which a prosecutor engages that are independent of prosecution, *Lee v. Willins, supra,* 617 F.2d at 322, are not protected by the doctrine of absolute immunity. For example, only a "good faith" immunity is available where a prosecutor testifies falsely as a witness, *Briggs, supra,* distributes extraneous statements to the press designed to harm a suspect's reputation, *Helstoski v. Goldstein,* 552 F.2d 564 (3d Cir. 1977) (*per curiam*); *Martin v. Merola,* 532 F.2d 191, 195–98 (2d Cir. 1976) (*per curiam*) (Lumbard, J., concurring), or participates in an illegal search that violates a suspect's Fourth Amendment rights, *Hampton, supra,* 600 F.2d at 632; *Lofland, supra,* 442 F.Supp. at 958.

Decisions to engage in conduct of this character are not directly related to the delicate judgments prosecutors must make concerning the development of the Govern-

ment's case. The "investigatory" and "administrative" work involved in testifying before a grand jury, accumulating evidence, and disseminating information to the press is analogous to the tasks performed by the police, and therefore only the same qualified "good faith" immunity is available.

This functional approach requires us to evaluate plea bargaining in light of the general purpose of the absolute immunity doctrine. Judge Griesa properly recognized that the purpose of the doctrine "is to insure that a prosecutor will perform his difficult function with complete vigor and independence, undeterred by the spector of liability for damages with respect to his activities." *Taylor v. Kavanagh, supra,* 492 F.Supp. at 389. Learned Hand has told us that the doctrine we apply today supports the just administration of the criminal law, for we all would suffer if prosecutors "who try to do their duty [were subject] to the constant dread of retaliation." *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). The threat of § 1983 liability would inhibit prosecutors from exercising independent judgment and would divert their attention from the immediate matters at hand. *See generally Imbler, supra,* 424 U.S. at 424–29, 96 S.Ct. at 992–94.

### III.

We are satisfied that a prosecutor's activities in the plea bargaining context merit the protection of absolute immunity. The plea negotiation is an "essential component" of our system of criminal justice, *Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971). *See generally American Bar Association Project on Standards for Criminal Justice, Pleas of Guilty* (Approved Draft 1968). It is at this stage that the prosecutor evaluates the evidence before him, determines the strength of the Government's case, and

considers the societal interest in disposing of the case by a negotiated guilty plea. The effective negotiation of guilty pleas would be severely chilled if a prosecutor were constantly concerned with the possibility of ruinous personal liability for judgments and decisions made at this critical stage of the criminal process.

Moreover, reference to the type of harm suffered from the alleged misconduct during a plea negotiation demonstrates that defendant Kavanagh should be afforded absolute immunity in this case. *Lee v. Willins, supra,* 617 F.2d at 322; *Halpern, supra,* 489 F.Supp. at 843. We recently noted that there can be no monetary liability for injuries related solely to the prosecution itself. *Lee v. Willins, supra.* Thus, if as a result of prosecutorial misconduct, a defendant · is compelled to face prosecution, or to suffer imprisonment or pretrial detention, the harm cannot be redressed via a § 1983 civil rights suit. But, where the alleged harm is inflicted independently from the prosecution—for example, the damage to reputation caused by a prosecutor's dissemination of false information to the press, *Helstoski, supra,* or the violation of Fourth Amendment privacy rights resulting from a prosecutor's authorization of an illegal search, *Lofland, supra*—the prosecutor cannot rely on the blanket protection of absolute immunity. *Lee v. Willins, supra.* In this case, the only harm caused by Kavanagh's purported misrepresentations and his failure to abide by a promise was imprisonment, an injury for which the *Imbler* doctrine of immunity protects the prosecutor.[1]

█ Finally, we note that by extending the doctrine of absolute immunity to a prosecutor's plea bargaining activities, we do not condone Kavanagh's alleged misconduct. Prosecutorial abuses can and should be remedied at the trial and appellate levels, as well as by state and federal post-conviction collateral procedures. *Imbler, supra,* 424

1. We do not find it necessary to consider whether the Supreme Court's recent decision in *Allen v. McCurry,* —— U.S. ——, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), is applicable to the facts of this case. In *Allen,* the Court held that principles of collateral estoppel bar a § 1983 civil rights suit for damages resulting from an allegedly illegal search and seizure where the legality of defendant's actions was previously adjudicated in a state court. Unlike the claim asserted in *Allen,* the § 1983 action in this case does not raise Fourth Amendment issues.

U.S. at 427, 96 S.Ct. at 993. Relief for misconduct committed during a plea negotiation includes the setting aside of the plea or ordering specific performance of the agreement. *Santobello, supra,* 404 U.S. at 263, 92 S.Ct. at 499; *Palermo v. Warden, Green Haven State Prison,* 545 F.2d 286, 297 (2d Cir. 1976), *cert. dismissed,* 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977).[2] In this case, Taylor raised vigorous objections to Kavanagh's conduct in state court. He also employed the federal habeas corpus procedure, without success. His failure to prevail in both the state and federal forums cannot justify the creation of another remedy, one which would impose a tremendous burden on society by severely undercutting prosecutorial independence and morale.

Affirmed.

---

2. Prosecutors are also subject to professional discipline for their misconduct. *See Imbler v. Pachtman,* 424 U.S. 409, 429 & n.30, 96 S.Ct. 984, 994 & n.30, 47 L.Ed.2d 128 (1976); ABA Code of Professional Responsibility § EC 7–13; *American Bar Association Project on Standards for Criminal Justice, The Prosecution Function and The Defense Function* §§ 1.1(e), 4.1(c), 4.3(c) (Approved Draft 1971).