533

Jose LOPEZ, et al, Plaintiffs
V.
John J. DRONEY, individually and
in his official capacity as District
Attorney for Middlesex County, et al,
Defendants

No. 80-2927-MA

United States District Court
Commonwealth of Massachusetts

June 17, 1981

Steven J. Rappaport, counsel for plaintiffs

Peter W. Agnes, Jr., counsel for Deft. Wm. Codinha

C. S. Denton, counsel for Deft. D. Cormier

Ira B. Sutton, counsel for Deft D. Sargentelli

P. R. Kelley, counsel for Deft Wm. Pultar

David Jenkins, counsel for Deft R. Davidson

## MEMORANDUM AND ORDER

MAZZONE, D. J. This is a civil rights action under 42 U.S.C. sec. 1983 and related state claims that grew out of a confrontation between the six plaintiffs and several Lowell, Massachusetts police officers at the close of the plaintiffs' New Years Eve party on January 1, 1979. The defendants are seven police officers; the

Attorney for Middlesex County, Massachusetts; and J. William Codhina, First Assistant District Attorney for Middlesex County. The two prosecutors have moved to dismiss under Fed.R.Civ.P. 12(b)(1) and (6), arguing that the complaint shows that their challenged actions were closely related to the judicial process and thereby protected by the doctrine of absolute prosecutorial immunity.

The prosecutors allegedly reneged on an agreement made by Assistant District Attorney Thomas McKean with the plaintiffs on February 11, 1980 that the criminal charges against the plaintiffs would be taken off the trial list and continued without a finding for six months in return for the plaintiffs' agreement to withdraw their applications for criminal complaints against the police officers.[1] The agreement specifically preserved the plaintiffs' rights to file a civil action based on the incident. That morning, the parties appeared before the Massachusetts Superior Court for Middlesex County, which entered an order continuing the cases without a finding.

Later in the day, however, Assistant District Attorney McKean allegedly telephoned the plaintiffs' attorney to inform her that the cases would be put back on the trial list unless the plaintiffs signed releases of their civil claims. The police officers involved had complained of the prosecutor's failure to require civil releases, the complaint recites, and defendant Codhina had then compelled McKean to either obtain releases or place the cases back on the trial list.[2]

The plaintiffs refused to waive their right to seek civil redress, and on February 26, 1980 the cases were put back on the trial list, the Superior Court vacating its order of February 11, 1980.

The plaintiffs then sought direct relief from the Massachusetts Supreme Judicial Court, which remanded for factual determinations. After a hearing, the Superior Court reinstated the continuance without a finding on June 11, 1980. Two days later the plaintiffs withdrew their applications for criminal complaints against the police officers, and on September 16, 1980 the Superior Court granted the plaintiffs' motions to dismiss.

The parties agree that applicability of prosecutorial immunity to this case is governed by **Imbler v. Pachtman,** 424 U.S. 409 (1976) and its progeny. Imbler was convicted of murder, incarcerated, and later freed by writ of habeas corpus. He sued the Deputy District Attorney who had prosecuted him, alleging that his civil rights had been violated by the prosecutor's intentional use of perjured testimony, suppression of exculpatory evidence, alteration of an identification sketch, and decision to prosecute despite a lie detector test that had "cleared" him. The Supreme Court held that the prosecutor's challenged activities "were intimately associated with the judicial phase of the criminal process," **id.** at 430, and that he was accordingly entitled to absolute immunity from suit under sec. 1983. Although recognizing that its holding would leave persons without civil redress against a malicious or dishonest prosecutor, **id.** at 427, the Court emphasized the compelling policy justifications for prosecutorial immunity:

A prosecutor is duty bound to

---

[1] An agreement to continue a criminal case without a finding for a specified period of time implies a tacit understanding that, if the defendant stays out of trouble, the case will be dismissed after the date specified. That understanding, however, has been held not to form part of the continuance agreement when not expressly included, **Commonwealth** v. **Eaton,** Mass. App. Ct. Adv. Sh. 837, 840 (1981) (no error when defendant was prosecuted after the expiration of one-year continuance without a finding). The instant case focuses on the prosecutor's promise to postpone the trial, not on an implied agreement to dismiss.

[2] The complaint does not specify how the defendant Droney was involved in these actions, except to allege generally that he acted "in concert" with Codhina. McKean is not a defendant.

exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.

**Id.** at 424-25 (citations omitted).

The **Imbler** Court, however, drew a distinction between the prosecutor's function as an advocate, which entitles him to absolute immunity, and his functions as investigator and administrator. The Court expressly declined to consider whether the prosecutor is absolutely immune from liability for his investigative and administrative activities. **Id.** at 430-31.

Subsequent cases in the lower courts have consistently held that only qualified immunity is available to the prosecutor for actions taken as an investigator or administrator. **E. g., Mancini v. Lester,** 630 F.2d 990, 992 (3d Cir. 1980); **Briggs v. Goodwin,** 569 F.2d 10, 21 (D.C. Cir. 1977), **cert. denied,** 437 U.S. 904 (1978); see, **Guerro v. Mulhearn,** 498 F.2d 1249, 1256 (1st Cir. 1974) (pre-**Imbler**). The problem of interpreting these cases is determining which prosecutorial activities fall within the area of advocacy and which are considered investigative or administrative. The distinction has procedural as well as substantive

importance: if we apply absolute immunity, the case against the prosecutors must be dismissed; if we apply qualified immunity, the prosecutors are protected only after they meet their burden to demonstrate they acted in good faith and without malice. See, **Gomez v. Toledo,** 446 U.S. 635 (1980); **Slotnick v. Garfinkle,** 632 F.2d 163, 166 n.2 (1st Cir. 1980).

Certainly, the alleged actions of the District Attorney and his First Assistant—instructing the prosecutor to violate the continuance agreement and put the plaintiffs' cases back on the trial list—were not investigative. And, although the prosecutors were acting as the Assistant District Attorney's supervisors, their activities related directly to controlling the course of the prosecution and were not aimed at an administrative function such as dismissal of employees. See, **D'Iorio v. County of Delaware,** 447 F.Supp. 229, 235 (E.D. Pa. 1978), **vacated and remanded on other grounds,** 592 F.2d 681 (3d Cir. 1978).

The case law supports characterization of the prosecutors' actions as within their roles as advocates, either as a decision to prosecute, see, **Imbler,** 424 U.S. at 416; **Graziano v. Ryan,** No. 80-2612-S, slip op. at 5 (D. Mass. May 21, 1981); **Henzel v. Gerstein,** 608 F.2d 654, 657 (5th Cir. 1979); or as plea-bargaining activity, see, **Taylor v. Kavanagh,** 640 F.2d 450, 453 (2d Cir. 1981); **Humble v. Foreman,** 563 F.2d 780, 781 (5th Cir. 1977); **Miller v. Barilla,** 549 F.2d 648, 649 (9th Cir. 1977). Although an agreement to continue a criminal case without a finding differs from a plea agreement in that the first is likely to result in a dismissal and the second in a conviction, both are integrally related to the judicial process because both are calculated to result in the disposition of criminal charges. Thus, an agreement to dismiss charges in exchange for a civil release has been held to fall within the prosecutor's "quasi-judicial" function, thereby immunizing him from

monetary liability. **Boyd v. Adams,** 513 F.2d 83, 86 (7th Cir. 1975).

The defendant prosecutors Droney and Codhina are therefore immune from liability in their individual capacities. In their capacities as state officials, the Eleventh Amendment bars suit for damages. **Edelman v. Jordan,** 415 U.S. 651 (1973). Since the section 1983 claims against these defendants are barred, we do not consider the pendent state claims. **Gibbs v. United Mine Workers,** 383 U.S. 715, 726-27 (1966). We thus need not reach the defendants' claims os absolute immunity under the common law of Massachusetts.[3]

Accordingly, we hold that the defendants Droney and Codhina are entitled to absolute immunity from liability for actions taken in connection with the agreement to continue the plaintiffs' cases without a finding. The motions to dismiss of defendants Droney and Codhina are granted.[4]

SO ORDERED.

**A. David Mazzone**
**United States District Judge**

---

[3] **See Andersen** v. **Bishop,** 204 Mass. 396 (1939).

[4] For a discussion of the role prosecutorial discretion plays in the administration of criminal justice, **see generally,** Vorenberg, Decent Restraint of Prosecutorial Power, 94 Harvard L. Rev. 1521 (May, 1981).