Ralph FORD, Petitioner,

v.

Manion, Alden, and John BURKE,
Jr., Respondents.

No. 79–CV–721.

United States District Court,
N. D. New York.

Jan. 4, 1982.

As Amended Jan. 6, 1982.

Ralph Ford, pro se.

Paul M. Collins, Corp. Counsel, City of Albany, Albany, N. Y., for defendant.

## MEMORANDUM–DECISION

MUNSON, Chief Judge.

Plaintiff Ralph Ford has brought this action under the guise of 42 U.S.C. § 1983, requesting that this Court determine the constitutional legitimacy of his arrest on September 2, 1977. Despite some reservation occasioned by this Court's prior experiences with Mr. Ford's constitutional challenges, an Order was issued on October 12, 1979 allowing the plaintiff to proceed in forma pauperis, which then resulted in a hearing before this Court on the 2nd and 3rd of December, 1980, Albany, New York.

Some procedural and factual background is necessary before the Court can address the law.

The plaintiff, Ralph Ford, previously brought a habeas corpus petition which was denied by this Court. *Ford v. Jones,* 78–CV–631 (N.D.N.Y. June 15, 1979). However, the Second Circuit ordered on March 10, 1980, that this Court review petitioner's claim of inadequacy of counsel. A hearing addressing those contentions resulted in a decision by this Court that Mr. Ford's Sixth Amendment rights had not been violated, leaving the guilty plea unassailed on those grounds. *Ford v. Jones,* 78–CV–631 (N.D. N.Y. July 27, 1981).

Previously, the state court had denied habeas review of Mr. Ford's allegation regarding ineffective assistance of counsel. Mr. Ford had also unsuccessfully sought review by writ of *corum nobis* in state court. Mr. Ford's earlier attempt to litigate this search and seizure claim was dismissed in state court. (Tr. p. 130).

Mr. Ford now focuses on the legality of his arrest as the basis for the present action. That arrest took place on September 2, 1977 in the city of Albany, about a mile from the robbery site. At that time he was charged with criminal possession of both a weapon and stolen property, and then later that evening he was charged with robbery and grand larceny stemming from activities taking place in the village of Menands at the actual robbery site. Arresting officers were Albany police detectives Manion and Burke. The relief requested does in no way suggest an alteration in the state court's determination of guilt, instead Mr. Ford seeks money damages to compensate any detriment suffered as a result of that arrest. The procedural vehicle for such an inquiry is not by way of habeas corpus petition, but rather by way of 42 U.S.C. § 1983.

### I.

■ The parties' contentions regarding the applicable statute of limitations may be summarily dealt with in light of the Second Circuit's recent decision of *Pauk v. Bd. of Trustees of the City Univ. of N.Y.,* 654 F.2d 856 (2d Cir. 1981). That opinion reviews previously applicable statutory limitations periods, and concludes that the three-year limitations period of CPLR § 214(2) shall apply as a matter of federal law in all § 1983 actions founded on the Constitution.

Mr. Ford's arrest on September 2, 1977, provided the basis for the present action filed in May of 1979.

The Second Circuit has recognized that accrual of a federal claim occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir. 1980), *quoting Kaiser v. Cahn,* 510 F.2d 282, 285 (2d Cir. 1974). Clearly CPLR § 214(2) properly accommodates this § 1983 action seeking protection under the Fourth Amendment, where the plaintiff did file within the prescribed three year period.

### II.

■ Defendants wish to interpose a good faith affirmative defense, which the Supreme Court in *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) has stated must be affirmatively pleaded. Although not present in their original answer, the record reflects that defendant's counsel had discussed amendment with the

Court previous to trial, but notice of the hearing was never conveyed in a manner which would have prompted the earlier filing of an amended answer. Granting a motion to amend is discretionary, but accepted practice dictates such motions should be liberally granted.

The defendants moved to amend their pleadings twice during the December 1980 hearing. The first was a general motion to amend under Fed. Rule 15, and the second was a motion pursuant to Fed. Rule 15(b) entered at the close the evidence seeking amendment in conformance with that evidence.

■ Turning first to the latter motion, this Court recognizes that motions to amend under Fed. Rule 15(b) are to be liberally granted. Furthermore, "Rule 15(b) often has been successfully utilized to permit the raising of various affirmative defenses that were not asserted in the pleadings. Among these are ... official immunity ..." 6 C. Wright & A. Miller, Fed.Prac. & Proc. Civil § 1492 at 460–1 (1971). That passage cites *Bradford Audio Corp. v. Pious*, 392 F.2d 67, 73 (2d Cir. 1968), which illustrates a procedural context significantly similar to that of the present case. The court in *Bradford* noted that it was in fact the appellant who had introduced the contentious testimony, and hence "[T]he appellee may avail himself of the appellant's proof." *Id.*

Similarly, this Court must recognize that it was the plaintiff Ralph Ford who introduced not only the defendant officers' state of mind regarding the arrest, but also directly questioned them on their understanding of the limits of a lawful arrest. Clearly, this inquiry complemented by the defendants' responses has provided the Court with adequate testimony to evaluate the affirmative defense posed by the defendants in their Rule 15(b) motion to amend.

Unlike the Sheriff in *Barrett v. Thomas*, 649 F.2d 1193, 1201 (5th Cir. 1981), the defendants herein did not wait until appeal to attempt the affirmative defense of a good faith immunity. The Fifth Circuit correctly followed *Gomez* in recognizing the

need for a defendant to affirmatively plead such a defense, however, interposing that claim on appeal leaves the court without an adequate record to review on the necessary issues.

The plaintiff's line of questioning divulged both the arresting officers subjective state of mind, and their objective understanding of the fundamental requisites of a lawful, constitutionally permissible arrest. The Supreme Court has clearly articulated the essential importance of this dual analysis in reckoning with the extension of a qualified immunity. *Gomez, supra*, at 641, 100 S.Ct. at 1924.

However, this Court must not slavishly impose a burden upon the defendants for pleading an affirmative defense, when it appears that some doubt survives *Gomez* as to the applicability of such an affirmative pleading burden on defendants in a § 1983 constitutional cause of action. The court in *Chagnon v. Bell*, 642 F.2d 1248, 1264 n.27 (Ct.App.D.C.1980) concluded that

[E]ven assuming that *Gomez*, which involved a statutory cause of action, is applicable to the present case, which involves a constitutional cause of action, we find that appellees have demonstrated in the record, without contradiction, that their actions were taken in good faith.

For these reasons, granting defendants' Rule 15(b) motion properly falls within the discretion of this Court.

### III.

■ The Court recognizes at the outset that the plaintiff may not now invoke additional constitutional safeguards as a means of addressing his guilt or innocence, for that was properly adjudicated at the state court level, and has properly withstood traditional habeas review on Sixth Amendment grounds. The operation of 28 U.S.C. § 1738 assures that this Court accord proper deference to the state court's findings.

Certainly the state courts are competent to review any issues regarding Fourth Amendment protections, and usually do so in pretrial suppression hearing circumstanc-

es. However, this particular case involved a voluntary admission of guilt and plea bargain. Both the voluntariness of Mr. Ford's plea, and the adequacy of counsel have been addressed by this Court, *Ford v. Jones*, 78–CV–631 (N.D.N.Y. July 27, 1981), leaving the guilty plea in the way of any inquiry this Court may focus on the legality of the arrest.

However Mr. Ford asserts that § 1983 may be utilized to go behind that guilty plea to find some justification for monetary damage.

An inquiry of this kind necessitates a closer examination of the function and purpose of the Fourth Amendment. Traditionally, this constitutional safeguard has shielded criminal defendants from convictions based on illegal search and seizure. Certainly, "state criminal defendants are more likely initially to concentrate their energies and resources on defending the state court action." *Developments in the Law—Section 1983 and Federalism*, 90 Harv.L.Rev. 1133, 1351 (1977). But beyond the obvious purpose of Fourth Amendment protections to prevent conviction based on illegal arrest the Supreme Court has addressed the function of this constitutional safeguard as a basis for post-conviction remedy on two recent occasions. Neither are controlling in this instance, yet both take a circuitous route to find the Fourth Amendment inappropriate as a basis for that particular post-conviction relief, using similar logic and nearly identical language.

The earlier address focused on the Fourth Amendment as a basis for federal habeas relief. Justice Powell in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1975) concluded that habeas corpus may not be used as a means of excluding evidence used at trial in state court, where a criminal defendant has "been afforded the opportunity for full and fair consideration upon the exclusionary rule with respect to seized evidence by the state courts at trial and on direct review." *Id.* at 489, 96 S.Ct. at 3050.

The overriding importance of habeas review is to "assure that no innocent person suffers an unconstitutional loss of liberty." *Id.* at 491, n.31, 96 S.Ct. at 3051, n.31. Collateral review involving Fourth Amendment considerations must bend to "(i) the most effective utilization of limited judicial resources, (ii) the necessity of finality in criminal trials, (iii) the minimization of friction between our federal and state systems of justice, and (iv) the maintenance of the constitutional balance upon which the doctrine of federalism is founded." *Id.*, quoting, *Schneckloth v. Bustamonte*, 412 U.S. 218, at 259, 93 S.Ct. 2041, at 2064, 36 L.Ed.2d 854 (Powell, J., concurring). The court in *Stone* concluded in that footnote that "in the case of a typical Fourth Amendment claim, asserted on collateral attack, a convicted defendant is usually asking society to redetermine an issue that has no bearing on the basic justice of his incarceration." *Id.*

Of course, the present case does not invoke habeas review, rather it attempts to utilize § 1983 as the procedural vehicle. The Supreme Court has very recently addressed § 1983 claims founded on the Fourth Amendment in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). This time Justice Stewart repeated the language used in *Stone* to summarize the limitations upon plaintiff's suing under § 1983. The Court reiterated "that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Id.* 101 S.Ct. at 415, citing, *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Prompted by criticisms from the dissent, the Court footnoted that passage with a warning that a "full and fair opportunity" to raise the claim was only a "single factor," and was insufficient, standing alone, to bar a litigant from raising the claim under § 1983. The Court neglected to articulate what those other "factors" may have been, and although some strong language followed describing a general unwillingness to intrude upon what is primarily a matter of state court concern, the circuit

and district court cases decided in the wake of *McCurry* illustrate the confusion fostered by the evasiveness of that Supreme Court decision. These cases are addressed following this discussion of *McCurry*.

Justice Stewart did review the intentions of Congress earlier itemized in *Monroe v. Pape*, 365 U.S. 167, 173–74, 81 S.Ct. 473, 476–77, 5 L.Ed.2d 492 (1961), concluding that a federal remedy only be provided "in three circumstances: where state substantive law was facially unconstitutional, where state procedural law was inadequate to allow full litigation of a constitutional claim, and where state procedural law, though adequate in theory, was inadequate in practice." *McCurry, supra*, 101 S.Ct. at 418. This outline of the limitations on § 1983 was followed by a repetition of the "full and fair opportunity" language, *Id.* at 418, suggesting that availability of a federal forum be prompted by the shortcomings of the state system, rather than inability or inactivity on the part of the criminal defendant.

Furthermore, the Court in *McCurry* squarely held that no unassailable right to a federal forum supports a § 1983 claim, especially when the state court "has shown itself willing and able to protect federal rights." *Id.* at 420; *Leigh v. McGuire*, 507 F.Supp. 458, 462 (S.D.N.Y.1981).

In sum, this Court must agree that "it is difficult to imagine a defendant risking conviction and imprisonment because he hoped to win a later civil judgment based upon an allegedly illegal search and seizure." *Id.* 101 S.Ct. at 420 n.23. Even the dissenting opinion in *McCurry* acknowledged that the availability of a federal forum should be triggered by the "ineffectiveness" of the available state forum, and further echoed the majority's observation of the reality of Fourth Amendment claims, stating, "[T]he risk of conviction puts pressure upon him to raise all possible defenses." *Id.* at 426 (dissenting opinion).

## IV.

The only case since *McCurry* within the Second Circuit address the same "full and fair opportunity" language on Fourth Amendment grounds found that "one factor" under that analysis is adequacy of counsel. *Cerbone v. Co. of Westchester*, 508 F.Supp. 780, 785 (S.D.N.Y.1981). Judge Weinfeld then went on to say that:

> [I]t would enfeeble the collateral estoppel rule if unsupported and conclusory allegations could call into question a litigant's past opportunity to fully and fairly litigate his case, particularly since the burden of showing that one has been denied a full and fair opportunity rests with the litigant opposing application of collateral estoppel.

*Id.* at 785–6.

◼ Clearly Mr. Ford has not met this burden, for this Court previously found that, "[N]owhere in the record from the state court, nor in the record of the hearing in federal court, is there a shred of evidence that the criminal defendant described any constitutional challenge of his arrest to his attorney, until after his original guilty plea." *Ford v. Jones, supra*, at 6. Furthermore, the record is replete with references to special proceedings and appeals of Mr. Ford's various attempts to review his guilty plea and arrest. Certainly under these circumstances, he may not now make a showing that he was in any way prevented from pursuing his right, when he has not included allegations of coercion in his complaint, and where counsel's advice has been found wholly adequate.

Most courts since *McCurry* have either refused to extrapolate a rule from that decision, *see Harl v. City of LaSalle*, 506 F.Supp. 1067, 1071 (N.D.Ill.1980), or have assumed that "full and fair opportunity" means actual litigation. It must be cautioned however, that each case reflects differing circumstances which suggests the "factor" analysis as the more appropriate method of evaluation.

The Fifth Circuit seems to hold the view that only actual prior litigation collaterally estops a plaintiff in federal court. *Richardson v. Fleming*, 651 F.2d 366, 374 (5th Cir. 1981). The *Richardson* opinion articulated

an unprecedented extension of this view in further stating that collateral estoppel would not apply to any alleged illegality "found to be harmless or not necessarily controlling of a criminal defendant's guilt." *Id.* *See also Vela v. Alvarez,* 507 F.Supp. 887, 889 (S.D.Tex.1981).

One district court in the Third Circuit shared a similar but less expansive view in interpreting *McCurry,* stating that "full and fair opportunity" actually means "fully and fairly litigated" in state court for collateral estoppel effect. *Carpenter v. Dizio,* 506 F.Supp. 1117, 1123 (E.D.Pa.1981).

The Third Circuit also cited *McCurry* in a very recent case, albeit not Fourth Amendment, and concluded that their earlier precedent remained unchanged in light of *McCurry.* *Lehman v. Lycoming Co. Children's Services Agency,* 648 F.2d 135, 144 (3rd Cir. 1981). The *Lehman* opinion allowed the previous requirement of prior litigation prompting *res judicata* to stand.

Both the Fifth and Third Circuits draw too expansive a definition of the *McCurry* holding. This Court shares the more realistic view expressed in *Cerbone, supra,* finding that the circumstances of the present case in no way suggest a justifiable need to go behind the guilty plea on the strength of conflicting testimony, when that guilty plea has withstood considerable prior scrutiny. *See Sperl v. Deukmejian,* 642 F.2d 1154, 1155 (9th Cir. 1981) (holding issues tried and rejected in state habeas proceedings may not be raised under § 1983).

▮ The plaintiff herein has already been afforded the opportunity to have this Federal Court review the state court proceedings in an effort to determine the constitutional legitimacy of his legal representation, which consequently brought into evidence the voluntariness of his plea. Mr. Ford's sentence followed a guilty plea and plea bargain, which was given under oath. He now seeks to introduce testimony, also under oath, which is completely at variance with his earlier plea. If Mr. Ford felt that the plea bargaining was in any way unfair, his relief would have been to have had the plea set aside for misconduct. *Taylor v.*

*Kavanagh,* 640 F.2d 450, 454 (2d Cir. 1981). Even before the guilty plea was taken, Mr. Ford had the opportunity to seek a suppression hearing, and if his motion to suppress was denied, he could later take a bargained guilty plea. *Cf. United States v. Gomez,* 633 F.2d 999, 1000 (2d Cir. 1980).

He now describes factual circumstances which in no way inculpate him in the robbery, and demands that this Court review this testimony as some basis for the legitimacy of his Fourth Amendment claim. Without passing judgment on the truth of his story, this Court expresses some consternation engendered by Mr. Ford's prior unwillingness to bring that information forward.

What results is a request by Mr. Ford for this Court to review the factual circumstances of his arrest on the basis of somewhere perjured testimony. It seems much more logical under the circumstances that Mr. Ford would now claim his earlier plea had been in some way coerced, but those allegations were neither brought forward in this action, nor in his previous action asserting ineffective assistance of counsel.

Yet defendants assert, without contradiction, that the plaintiff has already "attacked the constitutionality of the arrest and seizure of which he complains herein." (Amended Answer, ¶ 6 and Tr. p. 48–9).

This Court has not been provided with a full state court record, yet certainly the guilty plea has withstood attack from a number of angles.

▮ On these grounds, defendants raise the affirmative defense of collateral estoppel. *See generally* 10 C. Wright & A. Miller, Federal Practice and Procedure § 2735 (1973); *Barker v. Norman,* 651 F.2d 1107, 1130 (5th Cir. 1981). Although this defense first appears in the amended answer, this Court extends the earlier discussion of defendants' motion to amend to properly include this defense. Surely the testimony pertinent to this defense is not new to this Court, and again, was variously revealed in this record. Hence, plaintiff suffers no prejudice from the belated amendment.

## V.

In light of the fundamental nature of Mr. Ford's claims with respect to his state court conviction, this Court recognizes that any attack on Mr. Ford's arrest premised upon facts at odds with his guilty plea, goes to the heart of his state court conviction, and may not be cloaked in a § 1983 damage action. "Rather, habeas corpus is the exclusive initial cause of action when the basis of the claim goes to the constitutionality of the state court conviction." *Courtney v. Reeves*, 635 F.2d 326, 330 (5th Cir. 1981). That opinion correctly recognized, "that the propriety of actions brought under section 1983 is not to be determined solely on the basis of the relief sought." *Id.* Hence Mr. Ford's action must be viewed as a claim seeking habeas relief, for any evaluation by this Court of the contrary factual testimony would cast some doubt on the integrity of the state court proceedings which were soundly premised upon the voluntary guilty plea. The plaintiff has fully litigated an attempted change of guilty plea in both the state and federal courts, and this Court finds that that prior litigation prevents further attack in the absence of testimony that in any way reflects on the legality of that plea. *Barker v. Norman*, 651 F.2d 1107, 1130 (5th Cir. 1981) ("Collateral estoppel may in some circumstances bar civil rights claims whose central issues have been determined in a prior criminal proceeding." *Citing, Allen v. McCurry, supra.*).

In light of Mr. Ford's previous unsuccessful attempts at attacking his conviction, this Court must agree with the view adopted in the Second Circuit in *Taylor v. Kavanagh*, 492 F.Supp. 386 (S.D.N.Y.1980), *aff'd*, 640 F.2d 450 (2d Cir. 1981). The district court opinion stated, "[H]is failure to prevail in both the state and federal forums cannot justify the creation of another remedy, one which would impose a tremendous burden on society by severely undercutting prosecutorial independence and morale." *Id.* at 454.

In conclusion, this Court responds to the general analysis reiterated in *Stone, supra*, at 491 n.31, 96 S.Ct., at 3051 n.31, and in *McCurry, supra*, at 418, weighing the state versus federal concerns, the availability of alternative state remedies, general concerns of "effective utilization of limited judicial resources," and finally, fundamental consideration of the requisite prejudice to have been suffered by the plaintiff in order to sustain a constitutional violation which would result in any damage.

Traditionally the "requisite prejudice" has been a primary consideration under habeas review, *Pyles v. Keane*, 418 F.Supp. 269, 275 (S.D.N.Y.1976), and in the criminal context, the same analysis has been extended to § 1983 actions. *Cerbone, supra* at 786. Therefore, any § 1983 claim plaintiff may wish to pursue on Fourth Amendment grounds must expose a harm to the claimant that in no way involves his guilty plea and conviction, as this Court has already established that any claim addressing those events must be approached by way of habeas review. What remains under these facts is a stop and frisk, which in all respects is viable under the standard accepted in this Circuit.

The Second Circuit has adopted the Supreme Court's narrow exception to the search and seizure procedures mandated by Fourth Amendment considerations. *United States v. Gomez*, 633 F.2d 999, 1004 (2d Cir. 1980), *citing, Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The court in *Gomez* reiterated that "[a]n officer need have only a reasonable suspicion that criminal activity is afoot before subjecting a person to an investigatory stop." The opinion then expands upon this position by stating that "the officer must be able to articulate the specific and objective facts that form the basis for that reasonable suspicion." *Gomez, supra*, at 1004. Clearly the defendants satisfied this standard when they stopped Ralph Ford on the street as he was proceeding in a furtive manner, very near the robbery site, and generally matched the victim's description then being broadcast to all police officers. Beyond the initial encounter, the defendants were justified in displaying some force

to effect an investigatory stop, for as recognized in Gomez, "[a] police officer attempting to make an investigatory detention may properly display some force when it becomes apparent that an individual will not otherwise comply with his request to stop....," *quoting United States v. Thompson*, 558 F.2d 522, 524 (9th Cir. 1977), *cert. denied*, 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978). The record reveals that once stopped by detectives Manion and Burke, the plaintiff backed away and reached for his pocket, which may well have concealed a gun. It was not until that point that the defendants displayed any force, and then only drew a gun on the plaintiff, to insure their own protection.

■ The drawing of the gun does not automatically convert the incident to an arrest, requiring probable cause. *U. S. v. Jackson*, 652 F.2d 244 (2d Cir. 1981), Crim.Law Rep. 2378. The officers need only meet reasonable suspicion standard.

The Second Circuit has recently reiterated that "[t]he word 'stop' implies an interruption of short duration, restricted to the immediate vicinity in which it occurred." *United States v. Place*, 660 F.2d 44, 49–50 (2d Cir. 1981). Clearly the "stop" conducted by detectives Manion and Burke easily meets the standard of reasonable suspicion.

The hearing revealed that Mr. Ford voluntarily made an admission of guilt *immediately* after the officers took the gun and money from him (Tr. p. 76). Clearly there appears no duration of time separating the reasonable suspicion inquiry and the arrest based on both the stop and the admission of guilt.

■ No possible prejudice could flow from such an inquiry, hence there exists no grounds for § 1983 monetary damage.

For these reasons, this Court finds that plaintiff's complaint is in all respects dismissed, and the Clerk of the Court is hereby instructed to enter judgment in favor of the defendants.

IT IS SO ORDERED.