Elizabeth BARRETT, Individually and as Administratrix of the Estate of Harold Blauer, Deceased, Plaintiff,

v.

UNITED STATES of America, James Cattell, Newton Bigelow, David Marcus, Estate of Amedeo S. Marazzi, Van M. Sim, Herbert K. Greer, Frederick C. Lough, Harris J. North, William M. Creasy, John H. Derrick and George S. Leonard, Defendants.

76 Civ. 381 (CBM).

United States District Court, S.D. New York.

Oct. 8, 1985.

Bower & Gardner by Michael M. Futterman, Laurie A. Kamaiko, Angela Delfino-Vitali, New York City, for defendant Dr. James P. Cattell.

Frederick H. Block, New York City, for defendant David Marcus.

Pileckas & Pileckas by Paul L. Pileckas, Rome, N.Y., for defendant Newton Bigelow.

Baer, Marks & Upham by Eugene R. Scheiman, Deborah R. Linfield, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Susan Millington Campbell, New York City, for defendants U.S., Estate of Amedeo S. Marazzi, Van M. Sim, Herbert K. Greer, Frederick C. Lough, Harris J. North, William M. Creasy, John H. Derrick and George S. Leonard.

## OPINION

MOTLEY, Chief Judge.

Plaintiff Elizabeth Barrett has commenced this civil rights action both individually and as Administratrix of the Estate of Harold Blauer. Her causes of action against the various defendants arise out of the death of Mr. Blauer in January, 1953

after his fifth injection of a mescaline derivative drug. Twenty years after settling a wrongful death action brought against the State of New York in 1955, plaintiff was advised for the first time that the drug was supplied and administered as part of a drug experimentation program undertaken by the United States. Following this disclosure in 1975, plaintiff commenced three separate actions against various defendants which have now been consolidated. This case is now before this court on motions to dismiss and for summary judgment by the various defendants.

FACTS

In December, 1952, Harold Blauer, a forty-two year old professional tennis player and instructor, had been admitted voluntarily to the New York State Institute ["the Institute"], following shock therapy at Bellevue Hospital. On January 8, 1953, he died. He was survived by two daughters, Belinda and Elizabeth, and by his ex-wife, Amy Blauer. Shortly after Mr. Blauer's death, Mrs. Blauer retained the services of Kaye, Scholer, Fierman and Hayes to investigate her former husband's death and to take any appropriate legal action. The firm obtained copies of Mr. Blauer's death certificate which indicated that the cause of death was "Coronary arteriosclerosis; sudden death after intervenous injection of a mescaline derivative, January 8, 1953."

On April 2, 1953, Amy Blauer, as Administratrix of the Estate of Harold Blauer, commenced an action in the New York Court of Claims against the State of New York.[1] She asserted two causes of action.

The first claim alleged negligence in the care and treatment of decedent while he was a patient at the Institute. The second cause of action was for wrongful death based on the same allegation. The Estate moved for and was granted "inspection of the records pertaining to Harold Blauer" and examination of Blauer's treating physicians, Drs. G. Schnack and James Cattell. Pursuant to the order, the records were to be produced and the Doctors deposed at the Institute on January 12, 1954. While the State of New York never complied with this order, the attorneys for the Estate never undertook steps to enforce the court order.

On May 17, 1955, Amy Blauer settled the claim against the State of New York for the sum of $18,000.00. Mrs. Blauer was then represented by the law firm of O'Dwyer & Bernstein. A two day hearing was held before Judge Fred A. Young of the New York State Court of Claims. Prior to this hearing, David Marcus, who was then the Assistant Attorney General of the State of New York and represented the State, informed the Judge in an *ex parte* chambers conference that the United States supplied the drugs administered to Harold Blauer. He also advised the Judge that many of the documents involved in the action were classified.

During the settlement hearing, Mrs. Blauer testified that she was aware that her ex-husband had received a course of drug treatment for the purpose of making drug studies of his mental condition. In addition, she stated that to the best of her

---

**1.** The complaint in the 1953 action against the State of New York alleged that:

[t]he State of New York, by its agents, servants or employees, negligently, carelessly and improperly caused and permitted a substance to be administered to said decedent by injection; that although the State of New York prior to such date, administered such substance to decedent by injection and although, on such prior occasions, said decedent had reacted adversely and was made violently ill from the effects thereof and although the State of New York had knowledge of such adverse reaction and violent illness on the part of the decedent, it nevertheless negligently, carelessly and improperly adminis-

tered said substance on the date in question to decedent; that the said substance so administered by the State of New York as aforesaid to decedent was toxic and dangerous; that The State of New York negligently, carelessly and improperly caused and permitted an overdose of the same to be so administered to decedent; that The State of New York, after the administration of said substance as aforesaid, and upon the said decedent thereupon reacting adversely, further negligently and carelessly failed to apply the proper remedies to revive decedent from the effects of said substance so administered to decedent.

1953 Court of Claims Complaint, paragraph 13.

knowledge decedent did not suffer from a coronary condition and that she was settling the action voluntarily, free from duress and pressure. She also noted that she knew that the settlement sum of $18,000.00 was the only award that she would receive.

In addition to Mrs. Blauer, testimony was received at the hearing from the principal research psychiatrist at the Institute, Paul Hoch. Questioned only by David Marcus, Dr. Hoch testified that the drugs were administered to Mr. Blauer as part of a chemical therapy research project and that decedent died as a direct result of these drug injections. Furthermore, Dr. Hoch indicated that the drug study failed to comport with acceptable standards of clinical practice at that time.

Proposed findings of facts and conclusions of law were then submitted by Mr. Marcus with the acquiescence of Mrs. Blauer's counsel. The court approved of the settlement and release after the hearing.[2]

The general release executed by Mrs. Blauer provided in relevant part that:

AMY BLAUER, as Administratrix of the Goods, Chattels and Credits of HAROLD BLAUER ... in consideration of the sum of EIGHTEEN THOUSAND ($18,-000.00/100) DOLLARS ... paid by The State of New York, New York State Psychiatric Institute, all doctors, agents and employees thereof and the organization, group, governmental body or agency which furnished the drug used in the drug studies which resulted in the death of HAROLD BLAUER ... remise, release, and forever discharge the said State of New York, New York State Psychiatric Institute, all doctors, agents and employees thereof and the organization, group, governmental body or agency which furnished the drug used in the drug studies which resulted in the death of HAROLD BLAUER ... from all and all manner of action and actions, cause and causes of action, suits, debts, dues

... which against them I ever had, now have, or which I or my heirs, executors, or administrators hereafter can, shall or may have. ...

In his findings of facts and conclusions of law, Mr. Marcus also emphasized that the release ran to the State of New York, the Institute and all of the doctors, employees and agents of the Institute. In addition, he indicated that the release ran to "the organization, group, governmental body or agency which furnished the drugs used in the drug study."

Amy Blauer died in 1974. In August, 1975, a press release was issued by the Secretary of the Army announcing that a file had been discovered which revealed the death of a forty-two year old male civilian, Harold Blauer. The file indicated that Mr. Blauer died during the course of chemical compound test programs which were administered by the Army to determine the clinical effects of psychochemical agents on the psychiatric behavior of human subjects.

After subsequently reviewing the file, Elizabeth Blauer Barrett, Harold Blauer's daughter, learned that in 1954 an agreement was reached between the State of New York and the United States whereby the latter would pay half of any settlement agreement reached by the State of New York in the Court of Claims action provided that the purpose and role of the federal government in providing the drugs were not revealed. In September, 1975, Mrs. Barrett, as "daughter of Harold Blauer", filed an administrative claim with the United States in accordance with the requirements of the Federal Tort Claims Act, 28 U.S.C. section 2675. She sought damages for the wrongful death and the pain and suffering of Harold Blauer. No determination as to the merits of the claim was made by the United States.

Seeking discovery and inspection prior to commencing an action, Elizabeth Barrett commenced an additional proceeding in the New York Court of Claims late in 1975.

---

**2.** The parties to the Court of Claims action originally had agreed to settle the action for $15,-000.00. During the *ex parte* conference, Judge

Young required the State to raise the settlement to $18,000.00.

On January 9, 1976, her application for discovery was denied by the Court of Claims. It analyzed plaintiff's alleged cause of action against the state of New York and found it to be baseless.[3] The state court also held that the 1955 settlement and judgment barred further claims arising from the death of Harold Blauer in that court.

Elizabeth Barrett, failing to obtain the relief she sought in the state court, next commenced an action in her individual capacity in this court, *Barrett v. Hoffman*, et al, 76 Civ. 381. In the complaint filed on January 22, 1976, Mrs. Barrett charged that defendants, officials of the Department of the Army and the Department of Justice, and physicians at the Institute, conspired together to conduct the experimental drug program upon human subjects and to "cover-up" the existence of such program. In addition, defendants were alleged to have conspired "to deprive plaintiff, Blauer and others of life, liberty and property without due process of law and of the equal protection of the laws," and "to inflict cruel and unusual punishment upon Blauer." Mrs. Barrett instituted this action pursuant to 42 U.S.C. sections 1983, 1985(3) and 1986, and the Fifth, Ninth and Fourteenth Amendments. The causes of action predicated on sections 1985(3) and 1986 were dismissed by Judge Pierce. Currently, the only remaining defendants from that action are David Marcus, the Assistant

Attorney General of the State of New York who represented the State in the 1953 action in the State Court of Claims; Van Sim, a physician employed by the Department of the Army; George Leonard, a Department of Justice employee; Newton Bigelow, former Commissioner of the New York State Department of Mental Hygiene; James Cattell, Blauer's treating physician; the Estate of Amedeo Marazzi, former Chief of the Clinical Research Division, Chemical Corps Medical Laboratories of the Department of the Army; William Creasy, a General in the Department of the Army; and John Derrick, Harris North and Herbert Greer, Colonels in the Department of the Army.

A second action was commenced by Elizabeth Barrett on March 4, 1976, *Barrett v. United States, et al.*, 76 Civ. 1061. Plaintiff sued the United States, the Institute, the State of New York and several named state officials and doctors at the Institute. Plaintiff commenced this suit pursuant to the Federal Tort Claims Act, 28 U.S.C. sections 1346(b), 2671, *et seq.* In this action, plaintiff alleged that defendants had wrongfully administered the drugs to decedent without his consent and solely for experimental purposes. As a result of defendants' alleged wrongful acts, Blauer is alleged to have endured "pain, suffering, ... inconvenience ... [and] death." The complaint also included charges that the

---

**3.** In denying plaintiff's motion, the Court of Claims noted that the pleadings and papers submitted in support of the motion demonstrated "that the only new wrong which is complained of is this 'alleged conspiracy' to keep from the Administratrix in the Blauer claim and the public in general the knowledge that the decedent's death was caused by a secret experimental drug program." *Barrett v. State*, 85 Misc.2d 456, 461, 378 N.Y.S.2d 946, 951 (Ct.Cl.1976). While recognizing the controversial nature aspects of the program and the inexcusable continued secrecy, the court did not believe plaintiff had any further cause of action. *Id.* The court, in considering the 1955 settlement, stated:

As to the original claim, while it is now alleged that the fact that decedent died as a result of a secret drug experiment was kept from the administratrix, the petition filed in the Nassau County Surrogate's Court for leave to compromise her cause of action for wrong-

ful death, recited that the decedent died as a result of the administration of a drug and the cause of death was stated by the medical examiner's office to be "coronary arteriosclerosis, sudden death after intravenous injection of a mescalin derivative, January 8, 1953." Therefore, it is apparent to the court that the claimant had sufficient information regarding the death of the decedent to pursue her claim. The only thing that the claimant in that action did not have, was information pertaining to the involvement of the United States Government, through the Department of the Army. The Court must properly question what difference this information would have had with regard to that claim. There is no allegation that the judgment was insufficient or would have been in a greater sum had the withheld information been known. *Id.*

drugs were administered pursuant to a secret contract between the Institute and the Army, and that Amy Blauer was never advised of this fact when she instituted the Court of Claims action in 1953. The United States Government is the only remaining defendant.

A third action was commenced in this court by Mrs. Barrett on August 14, 1978, *Barrett v. Arthur*, et al., 78 Civ. 3762. This time Mrs. Barrett sued in both her individual capacity and as Administratrix of the Estate of Harold Blauer. Officials of the Department of Justice, the Department of the Army and of the Institute were sued. The only remaining defendant from that action is Frederick Lough, legal advisor to the Chief Chemical Officer of the Army. Mrs. Barrett again relied on 42 U.S.C. section 1983 and the Fifth, Ninth and Fourteenth Amendments, and charged virtually the same allegations as set forth in her complaint in *Barrett v. Hoffman,* 76 Civ. 381.

After the defendants in these actions moved to dismiss, Judge Pierce, the District Court Judge to whom these cases originally were assigned, authorized discovery limited to the issues of *res judicata,* release, and statute of limitations. Voluminous records, affidavits and briefs were submitted to Judge Pierce after approximately four years of discovery. The motions to dismiss were converted to motions for summary judgment pursuant to Fed.R. Civ.P. 56. Judge Pierce, "[c]onstruing the pleadings and evidentary submissions of the parties in the light most favorable to the plaintiffs," found that there were "no genuine issues of material fact which must be determined at trial relevant to the issue

of when plaintiffs' cause of action accrued." *Barrett v. Hoffman,* 521 F.Supp. 307, 314 (S.D.N.Y.1981). In addition, he found that a cause of action under section 1983 did not lie for plaintiff's claim of fraudulent concealment. *Id.* at 314–15.[4]

In *Barrett v. United States,* 689 F.2d 324 (2d Cir.1982), the Second Circuit reversed Judge Pierce. The Circuit Court indicated that a three year statute of limitations governed the plaintiff's section 1983 causes of action but ruled that an issue of fact existed as to when the statute of limitations began to run. The diligence-discovery accrual standard was held applicable to both the Federal Tort Claims Act and section 1983. The court noted that:

> [T]here exist factual disputes both as to whether diligence was employed by the estate without success and whether the role of the Army Chemical Corps would in any event have been revealed. Thus, the instant situation is unusual because even if the plaintiffs knew what caused Blauer's death, the path to unmasking who was responsible may well have been blocked. It is illogical to require a party to sue the government for negligence at a time when the Government's responsibility in the matter is suppressed in a manner designed to prevent the party, even with reasonable effort, from finding out about it.

*Id.* at 330. The date on which the statute of limitations began to run constituted a genuine issue of material of fact which was to be resolved at trial.

The Circuit Court also held that plaintiff had presented at least disputed factual is-

---

4. Judge Pierce, in rejecting plaintiff's claim, stated:

> Plaintiffs seek to convert the equitable defense of fraudulent concealment—generally asserted as a justification for tolling the statute of limitations ...—into a cause of action for deprivation of due process merely because the alleged concealing person is a government agency or officer. As far as this Court is aware, the due process requirements of the Fifth and Fourteenth Amendments have not yet been so expansively construed in civil litigation in which the government simply

> happens to be a party. Adoption by this Court of the rule espoused by the plaintiff would place upon the government in civil litigation a unique "duty to disclose", and would transmute a failure to disclose into a due process violation.... In the absence of a fiduciary relationship, there is no duty imposed upon a party—governmental or non-governmental—to voluntarily disclose evidence or a cause of action in a civil suit. *Hauben v. Harmon,* 605 F.2d 920, 924 (5th Cir.1979).

sues as to whether defendants had deprived her of due process by concealing the involvement of the United States in the drug experimentation program during the discovery and settlement negotiations of the 1955 Court of Claims action. This claim, according to the appellate court, was cognizable under section 1983 since "plaintiffs had a federally protected right not to be deprived of their property interest in the FTCA action without due process." *Id.* at 332. This action was then remanded for trial in accordance with the Court of Appeal's opinion. *Id.* at 333.

Since Judge Pierce had been appointed to the Second Circuit prior to the remand, this case was reassigned to this court. Plaintiff was granted leave to file an amended complaint after obtaining new counsel for the fifth time in this action. In her amended complaint, plaintiff has added Bivens claims against several defendants and raises all claims in both her individual and representative capacity.

The various defendants have moved either to dismiss the amended complaint or for summary judgment. A discussion on the motions follows below. Defendants' motions are granted in part and denied in part.

## DISCUSSION

### MOTIONS TO WHICH PLAINTIFF CONCEDES

■ The United States contends that the administrative claim filed by Elizabeth Barrett in September, 1975 (Exhibit "E" of Fed.Rule 3(g) Statement of Federal Defendants), a prerequisite to an FTCA suit against the United States, 28 U.S.C. section 2675, failed to set forth facts alleging an individual claim by her. Plaintiff concedes that she did not file the requisite Notice of Claim. Accordingly, the FTCA claims brought by Elizabeth Barrett individually against the United States are dismissed.

Plaintiff's amended complaint includes a third cause of action against defendants Marazzi, Sim, Greer, Lough, North, Creasy and Derrick, which alleges that they "acted to and did inflict cruel and unusual punishment upon Mr. Blauer and deprived him of life, liberty and property without due process of law and of the equal protection of the laws." (Amended Complaint, paragraph 47.) Plaintiff, in her fourth cause of action against defendants Cattell, Bigelow, Marazzi, Sim, Greer, Lough, North, Creasy and Derrick asserts the same claim. *See* Amended Complaint, paragraph 52. Defendants argue that the plaintiff may not sue under the Eighth Amendment. Plaintiff asserts that she never sought to bring suit under the Eighth Amendment. Therefore, any Eighth Amendment claims plaintiffs may have raised in their amended complaint are dismissed.

Plaintiff's first claim for relief is against the United States and seeks damages for the wrongful death of Harold Blauer and for "the resulting pecuniary losses suffered by plaintiff." In setting forth her allegations, plaintiff asserts that representatives of the United States and the State of New York conspired to conceal information from Amy Blauer and the New York Court of Claims regarding Blauer's death, and supplied false information to the New York City Medical Examiner. *See* Amended Complaint, paragraph "38". Additionally, plaintiff alleges that the alleged conspirators obtained a fraudulent release and settlement from Mrs. Blauer by "providing her with false and misleading information concerning Blauer's death," and concealed the involvement of the United States. *Id.*

Defendant United States asserts that this claim is precluded by 28 U.S.C. section 2680(h), which provides that claims predicated on "misrepresentation" or "deceit" are not actionable under the FTCA. Plaintiff, during oral argument, indicated that she was not suing the United States for misrepresentation but she only alleged those facts in response to the Government's allegations that the statute of limitations had expired. Accordingly, based on plaintiff's representation, the motion to dismiss is denied.

### VALIDITY OF 1955 RELEASE

Defendants contend that the 1955 release executed by Amy Blauer bars this action.

Plaintiff argues that summary judgment would not be appropriate on this issue since defendants are alleged to have fraudulently concealed all of the facts and circumstances surrounding Mr. Blauer's death. The court agrees.

▮ Under New York law a release is to "be closely scrutnized and strictly construed."[5] *Colton v. New York Hospital,* 53 A.D.2d 588, 589, 385 N.Y.S.2d 65 (1st Dep't 1976), citing *Boll v. Sharp & Dohme,* 281 App.Div. 568, 570, 121 N.Y.S.2d 20 (1st Dep't 1953), *aff'd* 307 N.Y. 646, 120 N.E.2d 836 (1954). A release is to be construed as a general release barring any and all claims against the released party only if the parties so intended. The release must be given a reasonable construction in accordance with the meaning of the language of the instrument. *Topat Equipment Co. v. Porter,* 50 A.D.2d 1098, 377 N.Y.S.2d 339 (4th Dep't 1975).

A party may be discharged of liability pursuant to a release, despite the fact he was not named *in haec verba.* *Oxford Comm. Corp. v. Landau,* 12 N.Y.2d 362, 239 N.Y.S.2d 865, 190 N.E.2d 230 (1963). In *Oxford Comm. Corp. v. Landau,* plaintiff corporation obtained a release from one of its directors who had been siphoning off its assets. The release provided that plaintiff would not commence an action against "any person whomsoever" in connection with the director's fraud. *Id.* at 364, 239 N.Y.S.2d at 866, 190 N.E.2d at 231. Plaintiff then commenced an action against their accountants alleging gross negligence in failure to discover the fraud and breach of agreement in faithfully performing their duties as accountants. The New York Court of Appeals held:

> [T]he plaintiff corporation's promise, contained in an integrated agreement reached after lawyer-guided negotiations

and containing provisions quite unlike the stereotyped verbiage found in the usual standard release, permits no conclusion other than that the plaintiff intended to release every one who participated in the Carlin transactions except the parties expressly excluded.

*Id.* at 366, 239 N.Y.S.2d at 867, 190 N.E.2d at 231–32.

▮ The release executed by Amy Blauer released from liability "the State of New York, New York State Psychiatric Institute, all doctors, agents and employees thereof and the organization, group, governmental body or agency which furnished the drug used in the drug studies which resulted in the death of HAROLD BLAUER." Thus, the language of the release indicates that the Estate intended to release not only New York State from liability, but also Dr. Cattell, an employee of and a doctor at the Institute, Dr. Bigelow and Mr. Marcus, employees of the State of New York.[6] In addition, the release ran explicitly to "the governmental body or agency which furnished the drug used in the drug studies." This language, unquestionably, pertains to the United States Army. Therefore, the release also runs to the remaining defendants in this action.

Furthermore, a release is to be given effect according to the law applicable at the time the release was given. *Jordan v. Westhill Central School District,* 42 A.D.2d 1043, 1044, 348 N.Y.S.2d 620, 621 (4th Dep't 1973). Although subsequently changed, the rule applicable at the time the release was given in 1955 "was that a release of one tortfeasor without a reservation of rights against joint tortfeasors is a release of the joint tortfeasors as well." *Id.* Accord, *Viskovich v. Walsh-Fuller-Slattery,* 16 A.D.2d 67, 225 N.Y.S.2d 100

---

**5.** Where defendant raises the defense of release, state law controls. *Rushford v. United States,* 204 F.2d 831, 832 (2d Cir.1953). Since the alleged tortious acts, the execution of the release, and the commencement of the present action occurred in New York, New York law governs the construction and effectiveness of the release. *Id.*

**6.** During the two day hearing before Judge Young of the New York Court of Claims Amy Blauer testified that she understood that the settlement and release "would cut off all claims [the Estate] may have against doctors, against the hospitals or the State of New York." *See* Cattell Ex. 7 (GG).

(1st Dep't 1962), *aff'd,* 13 N.Y.2d 1100, 246 N.Y.S.2d 632 (1963). This rule applies to the United States in FTCA actions. *Rushford v. United States, supra,* 204 F.2d at 832.

■ The court also must determine whether the release bars plaintiff's causes of action in this suit. The 1955 release provides for the release "from all and all manner of action and actions, cause and causes of action, suits, debts, dues ... which against them I ever had, now have, or which I or my heirs, executors, or administrators hereafter can, shall or may have...." This language indicates that the release given by the Estate in 1955 was a general release. At that time, a general release barred actions even where the releasor lacked knowledge of the true extent of the injury sustained or of the existence of a cause of action. *Rector, Church Wardens v. City of New York,* 261 App. Div. 614, 617, 26 N.Y.S.2d 762, 764 (2d Dep't 1941). *Accord, Lucio v. Curran,* 2 N.Y.2d 157, 161–62, 157 N.Y.S.2d 948, 952, 139 N.E.2d 133, 136 (1956). Exceptions to this rule existed when there was fraud, deceit or misrepresentation on the part of the releasee. *Rector, Church Wardens v. City of New York,* 261 App.Div. at 617, 26 N.Y.S.2d at 764.

A release which is improperly procured, whether through fraud, misrepresentation or deceit does not bar subsequent actions by the party executing the release. *Kress v. Long Island R.R.,* 526 F.Supp. 856 (S.D. N.Y.1981); *Dice v. Akron, Canton & Youngstown R. Co.,* 342 U.S. 359, 362, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952). A release has been set aside where plaintiff, who was not represented by counsel, was not advised of the full scope of his rights and benefits under law prior to its execution. *Apitsch v. Patapsco & Back Rivers Railroad Co.,* 385 F.Supp. 495, 505 (D.Md. 1974). In addition, a release may be set aside where the releasee is silent after becoming aware that the releasor is acting upon a mistaken belief as to a material fact. *Donovan v. Aeolian Co.,* 270 N.Y.

267, 271, 200 N.E. 815, 816, *reh. den.,* 271 N.Y. 532, 2 N.E.2d 681 (1936).

The party seeking to set aside the release bears the burden of proving that the release was fraudulently procured or induced. *Mangini v. McClurg,* 24 N.Y.2d 556, 301 N.Y.S.2d 508, 249 N.E.2d 386 (1969). Plaintiff must establish that: 1.) there was a misrepresentation of material fact; 2.) the representation was in fact false and was known to be false at the time it was made; 3.) the mispresentation was made for the purpose of inducing Amy Blauer to rely on it; 4.) Amy Blauer, as Administratrix of the Estate, did in fact rely upon the misrepresentation; and 5.) the Estate was caused injury as a proximate result of such misrepresentation. *Ciletti v. Union Pac. R. Co.,* 196 F.2d 50 (2d Cir.1952); *Simcuski v. Saeli,* 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978); *Channel Master Corp. v. Aluminum Ltd. Sales,* 4 N.Y.2d 403, 176 N.Y. S.2d 259, 151 N.E.2d 833 (1958).

In *Barrett v. United States, supra,* the Second Circuit indicated that:

Although the estate was probably aware in the 1950s of the connection between the injection and the decedent's death, Amy Blauer may well have settled the Court of Claims suit for a significantly lesser sum than she would otherwise have insisted upon had she known that the drug, whether therapeutic or not, was the sole cause of death. The extent of Amy Blauer's knowledge concerning the cause of death is therefore another factual issue ... which must be resolved at trial.

689 F.2d at 329. Although referring to the accrual of the statute of limitations, the Second Circuit's holding is applicable in considering this issue as well. Plaintiff asserts that defendants intended Amy Blauer, as Administratrix, to believe decedent died of coronary arteriosclerosis during the course of clinical treatment with a drug administered for diagnostic and therapeutic purposes. Defendants, according to plaintiff, knew that the Estate was unaware of the involvement of the United

States Army and intentionally perpetuated that misunderstanding in order to obtain a more favorable settlement. Defendants assert that the release put the Estate on notice that a governmental body had supplied the drug but that it never sought to investigate who the supplier was. A factual dispute exists as to whether the Estate exercised due diligence in discovery prior to settling the action in 1955, or whether the involvement of the Army would have been disclosed even if discovery actively was pursued. Thus, this court is precluded from determining whether the release was obtained through fraud. *Id.* at 330. An issue of fact exists as to whether defendants, the parties acquainted with the facts, deliberately endeavored *"to put obstacles in the way of [the Estate] so as to prevent [its] learning the truth." Haberman v. Greenspan,* 82 Misc.2d 263, 266, 368 N.Y. S.2d 717, 721 (Richmond Sup.Ct.1975) (emphasis in original) (citation omitted).

## IMMUNITY

Defendants Marcus, Greer, Lough, North and Leonard move to dismiss the amended complaint on the grounds that they are absolutely immune from suit or, in the alternative, that they have qualified immunity.

In *Barrett v. Hoffman,* 76 Civ. 381, slip op. at 15–18, (September 9, 1976), Judge Pierce held that defendant Marcus could not be sued for actions taken in his official capacity. He also held, however, that whether or not Marcus was immune from those actions undertaken in connection with the settlement in 1955 of the Court of Claims action could not be resolved on a motion to dismiss. Judge Pierce indicated that "the public interest factors involved in a public attorney *defending* a civil action are not as high as those relative to the prosecution of a criminal case." *Id.* at 17. The court believed that the factual circumstances surrounding the settlement of the action would have to be more fully developed before the court could "determine the appropriate legal standard which should be applied to this issue." *Id.*

Judge Pierce decided this motion, however, shortly after the Supreme Court handed down its decision in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), where it was firmly established that a government prosecutor enjoys absolute immunity against section 1983 liability in damages for actions taken in the course of a criminal case. Since Judge Pierce's decision was rendered, the Court has decided *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In *Butz v. Economou,* it was held that the *Imbler* immunity applied to governmental officials who had responsibility for initiating agency proceedings and to agency attorneys. The Court stated:

[C]ontroversies sufficiently intense to erupt in litigation are not easily capped by judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus. *See Pierson v. Ray,* 386 US [547] at 554, 18 LEd2d 288 [at 294], 87 SCt 1213 [at 1217]. Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.

438 U.S. at 512, 98 S.Ct. at 2913. In addition, note was made of the safeguards built into the judicial process which reduce the necessity for private damages actions as a mechanism for preventing unconstitutional conduct. *Id.* "Advocates are restrained not only by their professional obligations, but by the knowledge that their assertions will be contested by their adversaries in open court." *Id. See also Flood v. Harrington,* 532 F.2d 1248, 1250 (9th Cir.1976) (reasons supporting doctrine of absolute immunity in criminal proceedings apply with equal force in civil actions); *Safeguard Mutual Insurance Co. v. Miller,* 456 F.Supp. 682, 688 (E.D.Pa.1978) (fact that litigation is primarily civil rather than criminal not significant).

In an action commenced against the Corporation Counsel of the City of New York for the alleged illegal prosecution of the civil law, Judge Carter stated:

Admittedly, the public generally has a lesser interest in ensuring that the prosecutor is not deterred from enforcing the civil law than it does as respects the criminal law. On the other hand, it is also evident that an individual who is the victim of illegal actions by a prosecutor which involve the civil law generally has a considerably lesser interest in pursuing his rights based on the illegality of these acts than does the individual who has felt the full force of the criminal law wrongfully applied. In other words, the interest affected by the grant of prosecutorial immunity—*i.e.,* the protection of the proper functioning of public prosecutors and the protection of individuals who have wrongfully been made the targets of prosecution—are both of a somewhat lesser magnitude in the sphere of civil law than is the case in the criminal sphere. If this is true, as I believe it to be, the balance that must be reached between these interests is quite similar regardless of whether the prosecution giving rise to the [section] 1983 suit happens to be criminal, as in *Imbler,* or civil, as here.

*Martin Hodas, East Coast Cinematics v. Lindsay,* 431 F.Supp. 637, 643 (S.D.N.Y. 1977) (footnote omitted).

 Courts have held that absolute immunity will apply when a government attorney is acting in a "quasi-judicial" capacity as opposed to merely undertaking investigative or administrative acts. In those instances where the acts of the attorney are "investigative", only qualified "good faith" immunity applies. *Lee v. Willins,* 617 F.2d 320, 321–22 (2d Cir.), *cert. denied,* 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980). To determine which immunity is applicable, the court must consider "the functional nature of the prosecutorial behavior, rather than the status of the person performing the act." *Taylor v. Kavanagh,* 640 F.2d 450, 452 (2d Cir.1981).

 Claims based upon prosecutorial actions directly concerning pre-trial or trial phases of a case have been barred by the doctrine of absolute immunity. *Taylor v. Kavanagh, supra* (failure to fulfill terms of plea bargain); *Lee v. Willins, supra,* (falsification of evidence and coercion of witnesses); *Daniels v. Kieser,* 586 F.2d 64 (7th Cir.1978), *cert. denied* 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979) (swearing of warrants to insure witness's attendance at trial); *Heidelberg v. Hammer,* 577 F.2d 429 (7th Cir.1978) (destruction and falsification of lineup report and police tapes of incoming telephone calls); *Ryland v. Shapiro,* 586 F.Supp. 1495 (D.La.1984) (delay in prosecution of former district attorney for alleged murder of plaintiff's daughter); *Schieb v. Humane Soc. of Huron Valley,* 582 F.Supp. 717 (D.Mich.1984) (consulting with others in furtherance of scheme of illegal entrapment); *Stewart v. Deghroony,* 566 F.Supp. 1256 (D.Mo.1983) (collusion with appointed defense counsel to have motion dismissed); *Halpern v. City of New Haven,* 489 F.Supp. 841, 843 (D.Conn.1980) (failing to drop charges immediately before trial); *Brawer v. Horowitz,* 535 F.2d 830 (3rd Cir.1976); *Lofland v. Meyers,* 442 F.Supp. 955, 958 (S.D.N.Y.1977) (withholding exculpatory evidence, and soliciting and subornation of perjured testimony). Activities which are independent of prosecution and thereby not absolutely insulated from liability include the distribution to the press of extraneous statements designed to harm a defendant's reputation, *Powers v. Coe,* 728 F.2d 97 (2d Cir.1984); *Helstoski v. Goldstein,* 552 F.2d 564 (3rd Cir.1977) (*per curiam*); altering a trial transcript, *Slavin v. Curry,* 574 F.2d 1256 (5th Cir.1978), *reh. denied* 583 F.2d 779 (1978); participation in an illegal search that violates an individual's Fourth Amendment rights, *Hampton v. Hanrahan,* 600 F.2d 600 (7th Cir.1979), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (*per curiam*); testifying as a witness falsely, *Briggs v. Goodwin* 569 F.2d 10, 21 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978) [7]; the

---

7. Witnesses who give perjured testimony in a judicial proceeding, however, also have absolute

immunity from civil liability under section 1983. *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct.

issuance of opinions by Corporation Counsel of a city, *Shifrin v. Wilson,* 412 F.Supp. 1282, 1303–04 (D.D.C.1976); rendering advice in connection with discharge of a public employee, *Gilbert v. School Dist. No. 50,* 485 F.Supp. 505 (D.Colo.1980); and wrongfully dismissing an employee. *D'Iorio v. Delaware County,* 447 F.Supp. 229 (D.Pa.1978) *rev'd on other grounds,* 592 F.2d 681 (3rd Cir.1978).

In *Taylor v. Kavanagh, supra,* plaintiff brought an action against the Assistant District Attorney with whom his lawyers had negotiated a plea agreement. Plaintiff asserted that during plea negotiations, the Assistant District Attorney had misrepresented certain facts to him concerning a second indictment and that he would make no recommendation or statement relating to the sentence to be imposed. The Second Circuit held that the activities of a prosecutor during plea bargaining warrant the protection of absolute immunity. Noting the importance of plea bargaining to the criminal justice system, the court stated:

> It is at this stage that the prosecutor evaluates the evidence before him, determines the strength of the Government's case, and considers the societal interest in disposing of the case by a negotiated guilty plea. The effective negotiation of guilty pleas would be severely chilled if a prosecutor were constantly concerned with the possibility of ruinous personal liability for judgments and decisions made at this critical stage of the criminal process.

640 F.2d at 453. The court also noted that the plaintiff had other remedies available to remedy prosecutorial abuses, such as setting aside the plea or ordering specific performance of the agreement. *Id.* at 453–54. *Accord, Palermo v. Warden, Green Haven State Prison,* 545 F.2d 286 (2d Cir. 1976), *cert. denied,* 431 U.S. 911, 97 S.Ct.

2166, 53 L.Ed.2d 221 (1977); *Humble v. Foreman,* 563 F.2d 780 (5th Cir.), *reh. denied,* 566 F.2d 106 (1977).

The motive of the government attorney also does not control whether absolute immunity is applicable. As Judge Learned Hand has noted, even where the government attorney is "using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good," absolute immunity should apply. *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). He further stated that:

> "Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to satisfy the jury of his good faith. There must indeed be means of punishing public officials who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books.

*Id. Accord, Norton v. Liddel,* 620 F.2d 1375 (10th Cir.1980).

The absolute immunity afforded to government prosecutors has not been granted to court-appointed defense counsel in state malpractice actions. *Ferri v. Ackerman,* 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979). In *Ferri,* the Supreme Court stated that the same policy considerations which justify the grant of immunity

1108, 75 L.Ed.2d 96 (1983). The Second Circuit has held that such immunity does not extend to conspiracy with public officials to present such testimony. *San Filippo v. U.S. Trust Co. of New York, Inc.,* 737 F.2d 246, 254–55 (2d Cir.1984). The circuit court noted that the reason for witness immunity—"to encourage witnesses to come forward with all they know—does not justify extending that immunity to cover extrajudicial conspiracies between witnesses and the prosecutor to give false testimony." *Id.* at 255.

to government prosecutors are not applicable to court-appointed defense counsel. The court noted that the principle duty of the criminal defense lawyer was not to the public at large but rather to his client.[8] *Id.* at 204, 100 S.Ct. at 409. It was specifically noted by the Court that its holding was "confined to immunity in malpractice actions." *Id.* at 205 n. 22, 100 S.Ct. at 409 n.22.[9]

Some federal courts recently have held that government defense lawyers have absolute immunity from suit under section 1983 for their actions taken in connection with a litigation. In *Bulloch v. Pearson,* C-82-0230W (C.D.Utah June 27, 1982), slip op. at 7-15, the court found no reason to distinguish between prosecutors and defense counsel. The court noted that the test was whether the acts of the attorney were an integral part of the judicial process. *Id.* at 11. It indicated:

> [T]he common law and policies underlying the immunities accorded judges, witnesses, prosecutors and quasi-judicial officers mandate extending absolute immunity to government defense counsel for official acts intimately related to the judicial process. Furthermore, the scope of such immunity encompasses acts performed in preparation of trial as well as acts performed in the actual trial. To

hold otherwise would seriously undermine the principle of absolute immunity. *Id.* at 12-13.

In *Ellison v. Stephens,* 581 F.2d 584, 585 (6th Cir.1978), the court, while not explictly addressing the issue of absolute immunity, considered whether a state attorney could be sued for asserting the doctrine of sovereign immunity as a defense in a wrongful death action. Relying on *Imbler v. Pachtman, supra,* the court held that "the imposition of a legal defense, whether valid or not, is unquestionably 'an integral part of the judicial process' and may not be the basis of a civil rights action against the state's attorney who is immune under [section] 1983 for such conduct."

 This court accepts the reasoning of Judge Carter in *Martin Hodas, East Coast Cinematics v. Lindsay, supra,* the Utah District Court and the Sixth Circuit. While there may be less of a public interest in enforcing the civil law than there is in enforcing the public law, the public interest still exists. The public also has an interest in seeing that the government is defended in actions brought against it. For instance, government defense attorneys may have to defend a statute or ordinance from constitutional attack. Additionally, as Judge Carter indicated, the harm inflicted on a

---

8. In *Ferri v. Ackerman,* 444 U.S. 193, 204, 100 S.Ct. 402, 409, 62 L.Ed.2d 355 (1979), the Supreme Court, in discussing the relationship of court-appointed defense counsel to the government pointed out that although appointed by the court and serving the public in a general way by providing representation to an individual accused of violating a crime, such defense lawyers are required, in the course of providing effective representation, to oppose the Government in the adversary system. *Id.* at 204, 100 S.Ct. at 409. This is different from the role played by the various government attorneys in this action who were representing either the State of New York or the United States.

9. Plaintiff also relies on the case of *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) in support of her contention that absolute immunity is not applicable to governmental defense counsel. In *Pulliam,* the Court held that judicial immunity does not bar prospective injunctive relief against a judicial office acting in her judicial capacity, and does not bar an award of attorneys' fees under 42 U.S.C. section 1988. The court indicated that different

concerns exist when injunctive relief, as opposed to damages, is sought against a judge. The court stated:

> The limitations already imposed by the requirements for obtaining equitable relief against any defendant—a showing of an inadequate remedy at law and of a serious risk of irreparable harm ...—severely curtail the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants.

*Id.* at ——, 104 S.Ct. at 1978, 80 L.Ed.2d at 576. In addition, the Court found that Congress abrogated the judiciary's common law immunity when it enacted section 1988. According to the Supreme Court, the legislative history of that provision demonstrated "Congress' intent that an attorney's fee award be available even when damages would be barred or limited by 'immunity doctrines and special defenses, available only to public officials.' *Id.* at ——, 104 S.Ct. at 1982, 80 L.Ed.2d at 580, citing HR Rep No. 94-1558, p. 9 (1976).

victim of illegal acts by a government civil attorney, *i.e.*, loss of a property interest, is generally far less than the harm inflicted upon "the individual who has felt the full force of the criminal law wrongfully applied." *Martin Hodas, East Coast Cinematics v. Lindsay*, 431 F.Supp. at 643. After considering these various factors, there is no reason to deny a government defense attorney the same absolute immunity accorded to judges, witnesses, prosecutors and quasi-judicial officers.

Defendant Marcus, the Assistant Attorney General for the State of New York who handled the 1953 action against the State, is alleged to have procured the settlement of this action while failing to disclose facts which would have led Amy Blauer to the discovery of an underlying section 1983 action, and a claim against the United States under the FTCA. He is alleged to have conspired with attorneys from the Justice Department and the United States Army to withhold discovery materials from plaintiff despite the existence of a valid court order.

■ From the facts set forth in this action, it is evident that the actions of David Marcus arose in the context of the litigation. Just as the plea bargain is an intricate part of the criminal justice process, settlement is of great importance for civil litigation. If cases did not settle prior to actual trial, it would be impossible for the courts to handle all of the lawsuits instituted. In addition, it cannot be argued that decisions as to what materials should be released to an adversary during discovery does not constitute an action undertaken during the litigation process. Furthermore, an attorney's decision to attempt to avoid the depositions of certain witnesses in the hopes of procuring a settlement for his client also are actions arising out of the litigation. The fact that Mr. Marcus may have aided the United States as well as his client is unimportant. The motive of the attorney is irrelevant to the determination of whether absolute immunity should apply.

■ In the amended complaint, Mr. Marcus is alleged to be "a pivotal figure in planning and implementing the cover-up and [to have] engaged in *ex parte* communications with the Court of Claims in order to effectuate the conspiracy to hide the Army's role in Mr. Blauer's death." Amended complaint, paragraph "9". The complaint also alleges that his alleged actions were done to deprive the Estate of "its property right to be reasonably compensated for the pain and suffering and wrongful death of Mr. Blauer." Sixth Claim for Relief. Thus, pursuant to the allegations set forth in the amended complaint, it is evident that Mr. Marcus' alleged actions were done during the course of the litigation, in connection with the litigation, and for his client's benefit.

While this court does not condone the alleged acts of defendant Marcus in connection with the procurement of the settlement of the Court of Claims action, suit against him is barred since absolute immunity is applicable in this instance. Pursuant to the facts set forth by plaintiff, he acted to benefit not only the United States, but his client, New York State in his role as advocate. Accordingly, the action against Mr. Marcus is dismissed.

■ As to the Justice Department attorneys, they also contend that they have absolute immunity since their alleged actions were in connection with litigation. Plaintiff correctly points out that the United States was not a party to the original action. In those instances where attorneys were found to have absolute immunity, they were representing the government which was a party to the action. Here, there was no action against the United States in the 1950s by the Estate of Harold Blauer. In addition, although a potential lawsuit existed, the Estate was unaware of it. Thus this is not a situation where the government attorney is negotiating a settlement with a potential plaintiff in the hopes of averting a lawsuit. This is an instance where defendants are alleged to have acted unlawfully to withhold the name of their client in order to deprive

plaintiff of her property interest in an FTCA claim against the United States and civil rights actions against the various individual defendants. Such acts are not in connection with the litigation, but are comparable to an attorney rendering advice to his client as to how to avoid suit. Since such actions are not absolutely immune, federal defendants' motion to dismiss on this ground is denied.

## QUALIFIED IMMUNITY

■■■ A governmental attorney acting in other than his "quasi-judicial" capacity may have qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Court has noted that:

"[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.... Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.' "

*Id.* at 818–19, 102 S.Ct. at 2738.

■■■ The [federal] attorney defendants in this action are alleged to have deprived plaintiffs of their property rights by their alleged conspiratorial acts of concealing the possible FTCA action against the United States. Even in the 1950s, defendants should have been aware that they were depriving plaintiffs of their property right by their alleged actions. Accordingly, the motion to dismiss on ground that the federal attorneys and David Marcus have qualified immunity is denied.

## ELIZABETH BARRETT'S SUIT IN HER INDIVIDUAL CAPACITY

The defendants argue that plaintiff's *Bivens* and section 1983 claims in her amended complaint pertain only to the death of Harold Blauer on January 8, 1953 and the Court of Claims settlement in 1955 of the suit brought by his Estate. Defendants argue that the amended complaint contains no allegations that Elizabeth Barrett, individually, as distinct from as Administratrix, was deprived of any constitutional right. Therefore, defendants assert, the constitutional causes of action asserted by Elizabeth Barrett individually must be dismissed.

Pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), an individual may sue federal officials for damages for violation of his Fourth Amendment rights. *Bivens* has been extended by the courts to create damage remedies for other constitutional violations. *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Eighth Amendment); *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978) (Fifth Amendment); *Paton v. LaPrade*, 524 F.2d 862, 869–70 (3rd Cir.1975) (First Amendment).

■■■ A *Bivens* action, however, may be maintained by a plaintiff who has suffered a constitutional deprivation. In other words, the right of action is personal. *Davis v. Passman*, *supra*, 442 U.S. at 235 n. 10, 99 S.Ct. at 2271 n. 10; citing *Cannon v. University of Chicago*, 441 U.S. 677, 690–93 n. 13, 99 S.Ct. 1946, 1954–55 n. 13, 60

L.Ed.2d 560 (1979). Upon the death of an individual who suffered a constitutional deprivation, the *Bivens* right of action passes to the Estate. *Carlson v. Green*, 446 U.S. at 17–18, 100 S.Ct. at 1470–71.

It also is now a firmly established principle of law that a plaintiff may not assert the constitutional rights of another but can only rely upon his own constitutional rights in bringing a section 1983 action. *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Sterngass v. Bowman*, 563 F.Supp. 456 (S.D.N.Y.1983). "[S]ection 1983 civil rights action is a personal suit" and may not be brought by a relative, even the parents, *Dohaish v. Tooley*, 670 F.2d 934, 936 (10th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *White v. Talboys*, 573 F.Supp. 49 (D.Colo.1983); *Pierce v. Stinson*, 493 F.Supp. 609 (E.D.Tenn.1979), or spouse or children of the individual whose civil rights were violated. *Javits v. Stevens*, 382 F.Supp. 131 (S.D.N.Y.1974).

In *Barrett v. United States, supra*, 689 F.2d at 331, the Second Circuit held that Elizabeth Barrett has standing to assert the section 1983 claim in her father's name for his personal injuries. The Court of Appeals did not address the issue whether such a cause of action existed in her individual capacity. Pursuant to case law, it is evident she cannot maintain the civil rights actions in her individual capacity for her father's personal injuries.

The Court of Appeals, however, did find that Mrs. Barrett had a section 1983 cause of action in her individual capacity against defendants for the alleged deprivation of her property interest in a potential FTCA cause of action. *Id.* at 332. In addition, she would have a *Bivens* claim based on the same alleged deprivation.

Accordingly, based on the Second Circuit's decision, Mrs. Barrett, as an individual, has valid section 1983 and *Bivens* claims against defendants for their alleged concealment of the Army's involvement in the drug experimentation program. Her claim in her individual capacity seeking to recover for her father's personal injuries, however, are dismissed.

## STATUTE OF LIMITATIONS

### A. ELIZABETH BARRETT'S SUIT AS ADMINISTRATRIX

Defendants Cattell, Creasy, Sim, Leonard, North, Marazzi and Greer move to dismiss those claims for relief in the amended complaint by the Estate of Harold Blauer on grounds that they are barred by the statute of limitations. When plaintiff first sued these defendants in *Hoffman v. Barrett*, 76 Civ. 361, the suit was brought in Elizabeth Barrett's individual capacity and not as Administratrix of the Estate. Accordingly, since the Estate did not bring a cause of action against them until they filed their amended complaint, and did not seek to intervene in this action until 1978,[10] defendants argue that the claims are time barred.

Pursuant to Federal Rules of Civil Procedure, Rule 15(c), an amendment in the description of the party plaintiff, and relation back, is allowed at any time, if the change constitutes a "mere change in the description of the capacity in which plaintiff sues." Courts constantly have permitted amendment of complaints where the change was in form rather than substance. When the change does not result in a new cause of action, and does not alter the known facts and issues on which the action

---

10. Elizabeth Barrett, as Administratrix, had moved to intervene in *Barrett v. Hoffman, supra*, on August 14, 1978. Judge Pierce never ruled on the motion. Plaintiff's intervention motion, however, was timely. The Court of Appeals has held that plaintiff's section 1983 claims are governed by a three year statute of limitations, *Barrett v. United States*, supra, 521 F.2d at 333, and that for pretrial purposes, the cause of action accrued on August 12, 1975, when plaintiff was notified by the Army of the true facts surrounding Blauer's death. *Id.* Since August 12, 1978 was a Saturday, the statute of limitations continues to run "until the end of the next day which is not a Saturday, a Sunday, or a legal holiday." Fed.R.Civ.P. 6(a). Plaintiff's motion filed on Monday, August 14, 1978 thereby was timely made. Plaintiff's motion to intervene which was never decided by Judge Pierce, is granted.

is based, amendments to change the capacity in which plaintiff prosecutes the action have been allowed. *Missouri, Kansas & Texas Railway Co. v. Wulf,* 226 U.S. 570, 573, 33 S.Ct. 135, 136, 57 L.Ed. 355 (1912); *Metropolitan Paving Co. v. International Union of Operating Engineers,* 439 F.2d 300, 306 (10th Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 68, 30 L.Ed.2d 58 (1971); *Russell v. New Amsterdam Casualty Co.,* 303 F.2d 674, 677 (8th Cir.1962).

The cases cited by defendant Cattell are not controlling in this instance. In each of those cases, plaintiffs sought to add, after the statute of limitations had expired, new defendants who did not have adequate notice of the action, or a new cause of action. *See Archuleta v. Duffy's Inc.,* 471 F.2d 33 (10th Cir.1973) (new defendant); *Unicure v. Thurman,* 97 F.R.D. 1 (W.D.N.Y.1982) (new cause of action); *Strauss v. Rex,* 191 F.Supp. 128 (W.D.Pa.1960) (new defendant); *Sunbeam Corp. v. Windsor-Fifth Avenue,* 124 F.Supp. 547 (S.D.N.Y.1954) (new defendant); *Kerner v. Rackmill,* 111 F.Supp. 150 (M.D.Pa.1953) (new defendant). Elizabeth Barrett, by suing as administratrix, however, is only changing the capacity in which she is suing. As the Supreme Court has held, such an amendment is permissible if it does not modify or enlarge the facts upon which the action is based, and merely indicates "the capacity in which the plaintiff was to prosecute the action." *Missouri, Kansas & Texas Railway Co. v. Wulf, supra,* 226 U.S. at 573, 33 S.Ct. at 136. Accordingly, defendants' motion to dismiss the amended complaint on this ground is denied.

## B. BIVENS CLAIMS

Federal defendants also assert that the *Bivens* claims charged against them in the amended complaint are time barred since these causes of action were not alleged in the original complaints. The original complaints alleged civil and constitutional rights violations by the various defendants, and the actions were predicated upon section 1983. The Second Circuit also has noted that "the record is clear that the defendants were acting under color of state law." *Barrett v. United States, supra,* 689 F.2d at 332. When this court granted plaintiff leave to replead, however, plaintiff added the *Bivens* claims. The additional claims, set forth as the Third and Fifth Claims for Relief, were added in response to the federal defendants' assertions that they would assert as a defense at trial that they were not acting under color of state law.

■ Rule 15(c) of the Federal Rules of Civil Procedure provides:

Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

The court is to consider the general wrong suffered and the general conduct causing such wrong in determining whether the amended complaint sets up a new and different cause of action, or whether the claims will be related. *Green v. Wolf Corp.,* 50 F.R.D. 220 (S.D.N.Y.1970). For instance, courts consistently have held that the filing of an amended complaint which asserts federal securities laws violations relates back to the date of the original complaint which asserted state law claims provided that all of the claims arose out of the same basic facts. *Kamerman v. Pakco Co.,* 75 F.R.D. 673, 675 (S.D.N.Y.1977); *Kane v. Central American Mining & Oil, Inc.,* 235 F.Supp. 559, 565–66 (S.D.N.Y. 1964).

■ With the exception of "under the color of law" language, plaintiff's *Bivens* claims parallel the section 1983 claims. The proof and defenses required in the alleged *Bivens* claims are the same as required in the section 1983 causes of action. Since the transaction originally set forth to support the section 1983 claims also supports the *Biven* claims, federal defendants were generally on notice of the subsequent claims. The "same transaction or occurrence" test has been met. Federal defend-

ants motion to dismiss the Third and Fifth causes of action therefore is denied.

## SUMMARY JUDGMENT OF DR. JAMES CATTELL

██ Dr. Cattell was one of Harold Blauer's treating physicians at the Institute. In addition, he was one of the two witnesses whose deposition was ordered by the Court of Claims in 1953. Thus, defendant Cattell argues that plaintiff was aware of his role in the death of Mr. Blauer at the time it executed the release in 1955. In addition, he asserts that he was not involved in any cover-up of Army involvement.

Plaintiff, in opposition to his motion for summary judgment, relies on a report of Dr. Cattell (Joint Appendix, p. 107), which states that the drug given to Mr. Blauer was injected for diagnosis purposes. In addition the report indicates that the decedent had received the drug previously with no negative reaction. Other medicals, however, disclose that Mr. Blauer had expressed fear of the drug administered after later injections as did another patient. Accordingly a material issue of fact does exist as to Dr. Cattell's role in the events alleged in the amended complaint. His motion for summary judgment is denied.

## SUMMARY JUDGMENT MOTION OF DR. NEWTON BIGELOW

██ Defendant Bigelow moves for summary judgment on the grounds that he had no knowledge of and did not participate in the negotiations of any Army contract with the New York Psychiatric Institute. Additionally, he asserts that he did not participate in any way with the treatment of Harold Blauer or in the Court of Claims action. Defendant Bigelow contends that the allegations in plaintiff's complaint that he acted on behalf of the Institute in the negotiations of the contract and that he was involved in concealing the Army's role in Blauer's death are without foundation. Therefore, according to Bigelow, he did not commit a tortious act in violation of the FTCA or section 1983. Furthermore defendant contends that there is no genuine

issue of fact regarding his non-involvement in any fraudulent concealment and the statute of limitations therefore constitutes an absolute bar.

Plaintiff, in opposition to Bigelow's summary judgment motion, has submitted a copy of a letter from Paul H. Hoch, M.D., Principal Research Scientist to Dr. Bigelow, dated October 17, 1951. The letter indicates that Dr. Bigelow was sent "two Army contracts, one for psychiatric investigation and one for psychological investigation of certain drugs." The letter also requested that he sign the two contracts.

Merit discovery has not yet been completed in this action. It is therefore too early for this court to determine what role, if any, Dr. Bigelow played in the events from which this action arose. Accordingly, Dr. Bigelow's motion for summary judgment is denied without prejudice. He may renew his motion after discovery has been completed.

## REDUCTION OF AD DAMNUM CLAUSE IN AMENDED COMPLAINT

██ Defendant United States, relying on 28 U.S.C. section 2675(b) ["section 2675(b)"], seeks to reduce the amount of damages plaintiffs may seek in the FTCA causes of action. Section 2675(b) proscribes the commencement of an action under the FTCA "for any sum in excess of the amount of the claim presented to the federal agency." The statute provides for an exception when the increased amount is "based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim."

In the administrative notice of claim filed by Elizabeth Barrett, the claim was for $8,500,000.00. The *ad damnum* clause for plaintiffs' FTCA action indicates plaintiffs are seeking $20,000,000.00 in damages. Plaintiffs assert that this increase is justified on the ground of "newly discovered evidence." Without indicating what newly discovered evidence exists, plaintiff contends that the administrative claim filed in

1975 was prior to the production of documents kept secret since 1953.

The facts in this case differ from facts involved in those decisions cited by both plaintiffs and defendant United States in their briefs. Generally the "newly discovered evidence" exception is applied when a plaintiff is unaware of the "medical extent of his injuries and expenses" at the time his administrative complaint is filed. *Powers v. United States*, 589 F.Supp. 1084, 1110 (D.Conn.1984). *See also Campbell v. United States*, 534 F.Supp. 762, 766 (D.Haw.1982); *Rabovsky v. United States*, 265 F.Supp. 587, 588 (D.Conn.1967); *Morgan v. United States*, 123 F.Supp. 794, 797–98 (S.D.N.Y.1954). For instance, in *Letoski v. United States F.D.A.*, 488 F.Supp. 952, 958 (M.D.Pa.1979), plaintiff sought damages for physical injuries. After his administrative claim was made, his emotional health deteriorated and he had to seek psychiatric help. Evidence was produced that demonstrated plaintiff realistically could not have been expected to determine at the time the claim was made that he was suffering psychologically and required psychiatric assistance.

In this case, plaintiffs seek to recover damages for the wrongful death of Harold Blauer and for his pain and suffering. Plaintiffs' statement that documents were kept secret until 1975 is insufficient justification to permit an increase in damages on the basis of "newly discovered evidence." When the administrative claim was filed in 1975, plaintiffs were aware of the role of the United States in the drug experiment program and Mr. Blauer's death. While this court does not condone the secrecy concerning these documents, the mere existence of secret documents does not justify an increase in damages. Plaintiffs, who have received several hundred documents pursuant to discovery, have not shown that the documents revealed facts warranting an increase in damages sought in the administrative claim. There is no indication of the discovery of any evidence which plaintiff could not have discovered had she exercised due diligence prior to the filing of the administrative claim. She also has failed to disclose those factors which were taken into account when damages originally were set in the administrative claim. While it is plausible that the documents might reveal additional damages which due diligence on the part of plaintiff, after the role of the United States in Mr. Blauer's death was disclosed by the Secretary of the Army, would not have revealed, this court will not engage in the speculation required to make such a finding.

Because plaintiff has not presented proof of "newly discovered evidence" warranting an increase in damages in the *ad damnum* clause of the FTCA claim against the United States, the motion of the United States to reduce that clause from $20,000,000.00 to $8,500,000.00 is granted. Plaintiff, however, is granted leave to amend if, after discovery is completed, it is demonstrated that either newly discovered evidence not reasonably discoverable at the time the administrative claim was filed or intervening facts relating to the amount of the claim exist. This leave is granted in recognition of the fact that Mr. Blauer died over thirty years ago and plaintiff, in drawing up her administrative claim, might not have had knowledge of such things as decedent's pain and suffering.

■ Finally, this court must reject plaintiffs' argument that this issue need not be addressed at this time "because a complaint's *ad damnum* does not limit the permissible award and as such, the argument is of no moment." It is without cavil that damages awarded in actions brought under the FTCA cannot exceed the amount of the administrative claim unless the increased amount was based upon newly discovered evidence or intervening facts which were alleged and proved. *Erxleben v. United States*, 668 F.2d 268, 271 (7th Cir. 1981); *Molinar v. United States*, 515 F.2d 246, 249 (5th Cir.1975). To hold otherwise and accept plaintiffs' argument would render section 2675(b) meaningless. The United States, as sovereign, may be sued only upon its own terms and one of its terms is that any recovery under FTCA is limited to

the amount set forth in his administrative claim. *Singer v. United States*, 186 F.Supp. 131, 132 (E.D.N.Y.1960).

## CONCLUSION

Based on plaintiff's representations during oral argument, Elizabeth Barrett's FTCA action in her individual capacity is dismissed as are any Eighth Amendment claims asserted in her amended complaint. Since Mrs. Barrett has indicated that she is not suing the United States for misrepresentation, the Government's motion to dismiss plaintiff's first claim for relief in her amended complaint pursuant to 28 U.S.C. section 2680(h) is denied. Defendants' motion to dismiss on the grounds that the action is barred pursuant to the release executed by Amy Blauer in 1955, that the statute of limitations had expired, and that Elizabeth Barrett lacks standing to sue in individual capacity for the alleged deprivation of her property interest under 42 U.S.C. section 1983 and *Bivens* are denied. Defendants' motions to dismiss Elizabeth Barrett's causes of action in her individual capacity based on personal injuries to her father are granted. The United States motion to reduce the amount of the *ad damnum* clause of plaintiff's FTCA causes of action is granted without prejudice to plaintiff's moving to amend the complaint after discovery is completed. Dr. Cattell's motion for summary judgment is denied. Dr. Bigelow's motion for summary judgment is denied with leave to renew after discovery has been completed. The federal attorney defendants' motion to dismiss on the ground of absolute and qualified immunity is denied. After reconsideration, David Marcus' motion to dismiss on the ground that the action against him is barred by the doctrine of absolute immunity is granted.